(Slip Opinion)      OCTOBER TERM, 2005      1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## WACHOVIA BANK, NATIONAL ASSOCIATION *v.* SCHMIDT ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 04–1186.   Argued November 28, 2005—Decided January 17, 2006

Petitioner Wachovia Bank, National Association (Wachovia), is a national banking association with its designated main office in North Carolina and branch offices in many States, including South Carolina. Plaintiff-respondent Schmidt and other South Carolina citizens sued Wachovia in a South Carolina state court for fraudulently inducing them to participate in an illegitimate tax shelter. Shortly thereafter, Wachovia filed a petition in Federal District Court, seeking to compel arbitration of the dispute. As the sole basis for federal-court jurisdiction, Wachovia alleged the parties' diverse citizenship. See 28 U. S. C. §1332. The District Court denied Wachovia's petition on the merits. On appeal, the Fourth Circuit determined that the District Court lacked subject-matter jurisdiction over the action, vacated the judgment, and instructed the District Court to dismiss the case. The appeals court observed that Wachovia's citizenship for diversity purposes is controlled by §1348, which provides that "national banking associations" are "deemed citizens of the States in which they are respectively located." As the court read §1348, Wachovia is "located" in, and is therefore a "citizen" of, every State in which it maintains a branch office. Thus, Wachovia's South Carolina branch operations rendered it a citizen of that State. Given the South Carolina citizenship of the opposing parties, the court concluded that the matter could not be adjudicated in federal court.

*Held:* A national bank, for §1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located. Pp. 5–15.

   (a) When Congress first authorized national banks, it allowed them to sue and be sued in federal court in any and all civil proceedings.

State banks, however, could initiate actions in federal court only on the basis of diversity of citizenship or the existence of a federal question. Congress ended national banks' automatic qualification for federal jurisdiction in 1882, placing them "on the same footing as the banks of the state where they were located," *Leather Manufacturers' Bank* v. *Cooper,* 120 U. S. 778, 780. In an 1887 enactment, Congress first used the "located" language today contained in §1348. Like its 1882 predecessor, the 1887 Act "sought to limit . . . the access of national banks to, and their suability in, the federal courts to the same extent [as] non-national banks." *Mercantile Nat. Bank at Dallas* v. *Langdeau,* 371 U. S. 555, 565–566. In the Judicial Code of 1911, Congress combined two formerly discrete provisions on proceedings involving national banks, but retained without alteration the "located" clause. Finally, as part of the 1948 Judicial Code revision, Congress enacted §1348 in its current form. Pp. 5–7.

  (b) The Fourth Circuit advanced three principal reasons for deciding that Wachovia is "located" in, and therefore a "citizen" of, every State in which it maintains a branch office. First, consulting dictionaries, the court observed that the term "located" refers to "physical presence in a place." Next, the court noted that §1348 uses two distinct terms to refer to the presence of a banking association: "established" and "located." The court concluded that, to give independent meaning to each word, "established" should be read to refer to the bank's charter location and "located," to the place where the bank has a physical presence. Finally, the court relied on *Citizens & Southern Nat. Bank* v. *Bougas,* 434 U. S. 35, in which this Court interpreted the term "located" in the former venue statute for national banks, see 12 U. S. C. §94 (1976 ed.), as encompassing any county in which a bank maintains a branch office. Viewing the jurisdiction and venue statutes as pertaining to the same subject matter, the court concluded that, under the *in pari materia* canon, the two statutes should be interpreted consistently. Pp. 7–8.

  (c) None of the Fourth Circuit's rationales persuade this Court to read §1348 to attribute to a national bank, for diversity-jurisdiction purposes, the citizenship of each State in which the bank has established branch operations. First, the term "located," as it appears in the National Bank Act, has no fixed, plain meaning. In some provisions, the word unquestionably refers to the site of the banking association's designated main office, but in others, "located" apparently refers to or includes branch offices. Recognizing the controlling significance of context, this Court stated in *Bougas:* "There is no enduring rigidity about the word 'located.'" 434 U. S., at 44. Second, Congress may well have comprehended the words "located" and "established," as used in §1348, as synonymous terms. When Con-

gress enacted §1348's statutory predecessors and §1348 itself, a national bank was almost always "located" only in the State in which it was "established," under any of the proffered definitions of the two words. For with rare exceptions a national bank could not operate a branch outside its home State until 1994, when Congress broadly authorized national banks to establish branches across state lines. Congress' use of the two terms may be best explained as a coincidence of statutory codification. Deriving from separate provisions enacted in different years, the word "established" appearing in the first paragraph of §1348 and the word "located" appearing in the second paragraph were placed in the same section in the 1911 revision. The codifying Act stated that provisions substantially the same as existing statutes should not be treated as new enactments. Thus, it is unsurprising that, in 1947, this Court, referring to a national bank's citizenship under the 1911 Act, used the terms "established" and "located" as alternatives. See *Cope* v. *Anderson,* 331 U. S. 461, 467. Finally, *Bougas* does not control §1348's meaning. Although it is true that, under the *in pari materia* canon, statutes addressing the same subject matter generally should be read " 'as if they were one law,' " *Erlenbaugh* v. *United States,* 409 U. S. 239, 243, venue and subject-matter jurisdiction are not concepts of the same order. Venue, largely a matter of litigational convenience, is waived if not timely raised. Subject-matter jurisdiction, on the other hand, concerns a court's competence to adjudicate a particular category of cases; a matter far weightier than venue, subject-matter jurisdiction must be considered by the court on its own motion, even if no party raises an objection. Cognizant that venue "is primarily a matter of choosing a convenient forum," *Leroy* v. *Great Western United Corp.,* 443 U. S. 173, 180, the Court in *Bougas* stressed that its "interpretation of [the former] §94 [would] not inconvenience the bank or unfairly burden it with distant litigation," 434 U. S., at 44, n. 10. Subject-matter jurisdiction, however, does not entail an assessment of convenience. It poses the question "whether" the Legislature empowered the court to hear cases of a certain genre. Thus, the considerations that account for the *Bougas* decision are inapplicable to §1348, a prescription governing subject-matter jurisdiction, and the Court of Appeals erred in interpreting §1348 *in pari materia* with the former §94. Significantly, *Bougas'* reading of former §94 effectively aligned the treatment of national banks for venue purposes with the treatment of state banks and corporations. By contrast, the Fourth Circuit's decision in this case severely constricts national banks' access to diversity jurisdiction as compared to the access generally available to corporations, for corporations ordinarily rank as citizens only of States in which they are incorporated or maintain their principal place of

Syllabus

business, and are not deemed citizens of every State in which they maintain a business establishment. Pp. 8–14.

388 F. 3d 414, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which all other Members joined, except THOMAS, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–1186

WACHOVIA BANK, NATIONAL ASSOCIATION, PETI-
TIONER *v.* DANIEL G. SCHMIDT, III, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[January 17, 2006]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the citizenship, for purposes of federal-court diversity jurisdiction, of national banks, *i.e.*, corporate entities chartered not by any State, but by the Comptroller of the Currency of the U. S. Treasury. Congress empowered federal district courts to adjudicate civil actions between "citizens of different States" where the amount in controversy exceeds $75,000. 28 U. S. C. §1332(a)(1). A business organized as a corporation, for diversity jurisdiction purposes, is "deemed to be a citizen of any State by which it has been incorporated" and, since 1958, also "of the State where it has its principal place of business." §1332(c)(1). State banks, usually chartered as corporate bodies by a particular State, ordinarily fit comfortably within this prescription. Federally chartered national banks do not, for they are not incorporated by "any State." For diversity jurisdiction purposes, therefore, Congress has discretely provided that national banks "shall . . . be deemed citizens of the States in which they are respectively located." §1348.

The question presented turns on the meaning, in

§1348's context, of the word "located." Does it signal, as the petitioning national bank and the United States, as *amicus curiae*, urge, that the bank's citizenship is determined by the place designated in the bank's articles of association as the location of its main office? Or does it mean, in addition, as respondents urge and the Court of Appeals held, that a national bank is a citizen of every State in which it maintains a branch?

Recognizing that "located" is not a word of "enduring rigidity," *Citizens & Southern Nat. Bank* v. *Bougas,* 434 U. S. 35, 44 (1977), but one that gains its precise meaning from context, we hold that a national bank, for §1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located. Were we to hold, as the Court of Appeals did, that a national bank is additionally a citizen of every State in which it has established a branch, the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities. Congress, we are satisfied, created no such anomaly.

I

Petitioner Wachovia Bank, National Association (Wachovia), is a national banking association with its designated main office in Charlotte, North Carolina.[1] Wachovia

---

[1] A national bank, on formation, must designate, in its organization certificate and articles of association, the "place where its operations of discount and deposit are to be carried on." 12 U. S. C. §22 (Second); see §21; Office of the Comptroller of the Currency, Instructions—Articles of Association, Specific Requirements ¶12, available at http://www.occ.treas.gov/corpbook/forms/articles-conv.doc (All Internet materials as visited Jan. 13, 2006, and included in Clerk of Court's case file.) The place so designated serves as the bank's "main office." Changes in the location of that office are effected by amendment to the bank's articles of association. See 12 U. S. C. §§21a, 30(b); 12 CFR §5.40(d)(2)(ii) (2005). The State in which the main office is located

operates branch offices in many States, including South Carolina.[2]

The litigation before us commenced when plaintiff-respondent Daniel G. Schmidt III and others, citizens of South Carolina, sued Wachovia in a South Carolina state court for fraudulently inducing them to participate in an illegitimate tax shelter. Shortly thereafter, Wachovia filed a petition in the United States District Court for the District of South Carolina, seeking to compel arbitration of the dispute. As the sole basis for federal-court jurisdiction, Wachovia alleged the parties' diverse citizenship. See 28 U. S. C. §1332. The District Court denied Wachovia's petition on the merits; neither the parties nor the court questioned the existence of federal subject-matter jurisdiction. On appeal, a divided Fourth Circuit panel determined that the District Court lacked diversity jurisdiction over the action; it therefore vacated the judgment and instructed the District Court to dismiss the case.

The Court of Appeals' majority observed that Wacho-

———————
qualifies as the bank's "home State" under the banking laws. 12 U. S. C. §36(g)(3)(B).

[2] National banks originally lacked authority to operate branch offices. Act of Feb. 25, 1863, §11, 12 Stat. 668. In 1865, Congress enacted an exception permitting a state bank that converted to a national bank to retain its pre-existing branches. Act of Mar. 3, 1865, §7, 13 Stat. 484. Congress authorized limited branch operations in the bank's home State in 1927 and 1933. McFadden Act (Branch Banks), 1927, §7(c), 44 Stat. 1228; Glass-Steagall Act, 1933, §23, 48 Stat. 189–190. These Acts, like the 1865 enactment, allowed interstate branching only under narrow "grandfather" provisions. McFadden Act, §7(a)–(b), 44 Stat. 1228; see *Girard Bank* v. *Board of Governors of Fed. Reserve System*, 748 F. 2d 838, 840 (CA3 1984) (observing that only two national banks had "grandfathered" interstate branches). Not until 1994 did Congress grant national banks broad authority to establish branch offices across state lines. See Riegle-Neal Interstate Banking and Branching Efficiency Act of 1994, §101, 108 Stat. 2339. See generally J. Macey, G. Miller, & R. Carnell, Banking Law and Regulation 18–19, 23, 32–33 (3d ed. 2001).

via's citizenship for diversity purposes is controlled by §1348, which provides that "national banking associations" are "deemed citizens of the States in which they are respectively located." As the panel majority read §1348, Wachovia is "located" in, and is therefore a "citizen" of, every State in which it maintains a branch office. Thus Wachovia's branch operations in South Carolina, in the majority's view, rendered the bank a citizen of South Carolina. Given the South Carolina citizenship of the opposing parties, the majority concluded that the matter could not be adjudicated in federal court. 388 F. 3d 414, 432 (CA4 2004).

Circuit Judge King dissented. He read §1348 and its statutory precursors to provide national banks with "the same access to federal courts as that accorded other banks and corporations." *Id.,* at 434. On his reading, Wachovia is a citizen only of North Carolina, the State in which its main office is located, not of every State in which it maintains a branch office; accordingly, he concluded, Wachovia's petition qualified for federal-court adjudication.[3]

We granted certiorari to resolve the disagreement among Courts of Appeals on the meaning of §1348. 545 U. S. ___ (2005). Compare *Horton* v. *Bank One, N. A.*, 387 F. 3d 426, 429, 431 (CA5 2004) (for §1348 purposes, "a national bank is not 'located' in, and thus [is] not a citizen of, every state in which it has a branch"; rather, the provision retains "jurisdictional parity for national banks vis-à-vis state banks and corporations"), and *Firstar Bank, N. A.* v. *Faul*, 253 F. 3d 982, 993–994 (CA7 2001) (same), with 388 F. 3d, at 432 (§1348 renders national bank a citizen, not only of the State in which its main office is located, but

—————

[3] Wachovia unsuccessfully moved for rehearing en banc. Six judges voted to grant the rehearing petition, three voted to deny it, and four recused themselves. Thus the petition failed to garner the required majority of the Circuit's 13 active judges. No. 03–2061 (CA4, Jan. 28, 2005), App. to Pet. for Cert. 57a–58a.

also of every State in which it has branch operations), and *World Trade Center Properties, LLC* v. *Hartford Fire Ins. Co.*, 345 F. 3d 154, 161 (CA2 2003) (dictum) (same).

## II

When Congress first authorized national banks in 1863, it specified that any "suits, actions, and proceedings by and against [them could] be had" in federal court. See Act of Feb. 25, 1863, §59, 12 Stat. 681. National banks thus could "sue and be sued in the federal district and circuit courts solely because they were national banks, without regard to diversity, amount in controversy or the existence of a federal question in the usual sense." *Mercantile Nat. Bank at Dallas* v. *Langdeau,* 371 U. S. 555, 565–566 (1963). State banks, however, like other state-incorporated entities, could initiate actions in federal court only on the basis of diversity of citizenship or the existence of a federal question. See *Petri* v. *Commercial Nat. Bank of Chicago,* 142 U. S. 644, 648–649 (1892).

Congress ended national banks' automatic qualification for federal jurisdiction in 1882. An enactment that year provided in relevant part:

"[T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun[.]" Act of July 12, 1882, §4, 22 Stat. 163.

Under this measure, national banks could no longer invoke federal-court jurisdiction solely "on the ground of their Federal origin," *Petri*, 142 U. S., at 649; instead, for federal jurisdictional purposes, Congress placed national

banks "on the same footing as the banks of the state where they were located," *Leather Manufacturers' Bank* v. *Cooper,* 120 U. S. 778, 780 (1887).

In 1887 revisions to prescriptions on federal jurisdiction, Congress replaced the 1882 provision on jurisdiction over national banks and first used the "located" language today contained in §1348. The 1887 provision stated in relevant part:

> "[A]ll national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal or mixed, and all suits in equity, *be deemed citizens of the States in which they are respectively located;* and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State." Act of Mar. 3, 1887, §4, 24 Stat. 554–555 (emphasis added).[4]

Like its 1882 predecessor, the 1887 Act "sought to limit . . . the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks [were] so limited." *Langdeau,* 371 U. S., at 565–566.

In the Judicial Code of 1911,[5] Congress combined two formerly discrete provisions on proceedings involving national banks, but retained without alteration the clause deeming national banks to be "citizens of the States in which they are respectively located." Act of Mar. 3, 1911,

_____

[4] The term "established under" did appear in the 1882 and 1887 formulations, in both texts as synonymous with the term "organized under." In neither measure is the word used in a locational sense.

[5] Earlier, in 1888, Congress had revised the 1887 prescription by adding as a separate paragraph this caveat: "The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank." Act of Aug. 13, 1888, §4, 25 Stat. 436.

§24 (Sixteenth), 36 Stat. 1091–1093.[6]　Finally, as part of the 1948 Judicial Code revision, Congress enacted §1348 in its current form.　Act of June 25, 1948, 62 Stat. 933. The provision now reads:

> The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.
>
> "All national banking associations shall, for the purpose of all other actions by or against them, be deemed citizens of the States in which they are respectively located."　28 U. S. C. §1348.

## III

The Fourth Circuit panel majority advanced three prin-

---

[6] In full, the 1911 text stated:

"The district courts shall have original jurisdiction . . . [o]f all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, and cases for winding up the affairs of any such bank; and of all suits brought by any banking association established in the district for which the court is held, under the provisions of title 'National Banks,' Revised Statutes, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by said title.　And all national banking associations established under the laws of the United States shall, for purposes of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located."　36 Stat. 1091–1093.　The first sentence of this formulation merged the 1888 caveat with text, including the word "established," originally contained in the Act of Dec. 1, 1873, §629 (Tenth to Eleventh), 18 Stat. 111.　The second sentence, including the word "located," derives from the 1887 formulation.

cipal reasons for deciding that Wachovia is "located" in, and therefore a "citizen" of, every State in which it maintains a branch office.  First, consulting dictionaries, the Court of Appeals observed that "[i]n ordinary parlance" the term "located" refers to "physical presence in a place." 388 F. 3d, at 416–417 (internal quotation marks omitted). Banks have a physical presence, the Fourth Circuit stated, wherever they operate branches.  *Id.*, at 417.  Next, the court noted, "Section 1348 uses two distinct terms to refer to the presence of a banking association: 'established' and 'located.'"  *Id.,* at 419.  "To give independent meaning" to each word, the court said, "it is most reasonable to understand the place where a national bank is 'established' to refer to a bank's charter location, and to understand the place where it is 'located' to refer to the place or places where it has a physical presence."  *Ibid.*  Finally, the Court of Appeals stressed that in *Citizens & Southern Nat. Bank* v. *Bougas,* 434 U. S. 35 (1977), this Court interpreted the term "located" in the former venue statute for national banks, see 12 U. S. C. §94 (1976 ed.), as encompassing any county in which a bank maintains a branch office.  388 F. 3d, at 419–420.  Reasoning that "the jurisdiction and venue statutes pertain to the same subject matter, namely the amenability of national banking associations to suit in federal court," the panel majority concluded that, "under the *in pari materia* canon[,] the two statutes should be interpreted" consistently. *Id.,* at 422.

## IV

None of the Court of Appeals' rationales persuade us to read §1348 to attribute to a national bank, for diversity jurisdiction purposes, the citizenship of each State in which the bank has established branch operations.  First, the term "located," as it appears in the National Bank Act, has no fixed, plain meaning.  In some provisions, the word unquestionably refers to a single place: the site of the

banking association's designated main office. See, *e.g.,* 12 U. S. C. §52 (national bank's capital stock certificates must state "the name and location of the association"); §55 (requiring notice of sale of capital stock "in a newspaper of the city or town in which the bank is located"); §75 (bank's regular annual shareholders' meeting shall be rescheduled when it "falls on a legal holiday in the State in which the bank is located"); §182 (requiring publication of a notice of dissolution "in the city or town in which the association is located"). In other provisions, "located" apparently refers to or includes branch offices. See, *e.g.,* §36(j) (defining "branch" to include "any branch place of business located in any State"); §85 (limiting interest rate charged by national bank to "rate allowed by the laws of the State, Territory, or District where the bank is located") (construed in OCC Interpretive Letter No. 822 (Feb. 17, 1998), [1997–1998 Transfer Binder] CCH Fed. Banking L. Rep. ¶81–265, pp. 90,256-90,257); §92 (permitting national bank to act as insurance agent in certain circumstances when bank is "located and doing business in any place the population of which does not exceed five thousand inhabitants") (construed in 12 CFR §7.1001 (2005)).[7] Recognizing the controlling significance of context, we stated in *Bougas*, regarding a venue provision for national banks: "There is no enduring rigidity about the word 'located.'" 434 U. S., at 44.

Second, Congress may well have comprehended the

─────────

[7] The Court of Appeals did not overlook these nonuniform uses of the word "located" in various provisions of the National Bank Act. See 388 F. 3d 414, 425 (CA4 2004). Nevertheless, it declared that, in §1348, "located" unambiguously means "physically present." *Ibid.* (internal quotation marks omitted). The court did not say what facilities other than branch offices, for example, storage sites or even automated teller machines, would suffice to establish a bank's physical presence. Cf. Tr. of Oral Arg. 36–37 (counsel for respondents stated that an ATM, although an arguable question, probably would suffice to locate a bank in a State for §1348 purposes).

words "located" and "established," as used in §1348, not as
contrasting, but as synonymous or alternative terms.
When Congress enacted §1348's statutory predecessors
and then §1348 itself, a national bank was almost always
"located" only in the State in which it was "established,"
under any of the proffered definitions of the two words,
for, with rare exceptions, a national bank could not oper-
ate a branch outside its home State.  Not until 1994 did
Congress provide broad authorization for national banks
to establish branches across state lines.  See *supra*, at 3,
n. 2.  Congress' use of the two terms may be best explained
as a coincidence of statutory codification.  Deriving from
separate provisions enacted in different years, the word
"established" appearing in the first paragraph of §1348
and the word "located" appearing in the second paragraph
were placed in the same section in the 1911 revision of the
Judicial Code.  See *supra*, at 6–7, n. 6.  The codifying Act
explicitly stated that "so far as [its provisions were] sub-
stantially the same as existing statutes," they should "be
construed as continuations thereof, and not as new enact-
ments."  Act of Mar. 3, 1911, §294, 36 Stat. 1167; see
*Federal Intermediate Credit Bank of Columbia* v. *Mitchell,*
277 U. S. 213, 216 (1928) (1911 Act "was in substance a
reenactment of the earlier provisions in respect of . . . juris-
diction").  In this light, it is unsurprising that, in 1947, this
Court, referring to a national bank's citizenship under the
1911 Act, used the terms "located" and "established" as
alternatives.  See *Cope* v. *Anderson,* 331 U. S. 461, 467
(1947) ("For jurisdictional purposes, a national bank is a
'citizen' of the state in which it is established or located[.]").[8]

------

[8] Context also matters in assigning meaning to the word "estab-
lished."  See, *e.g.,* Convention Between the Government of the United
States of America and the Government of the United Kingdom of Great
Britain and Northern Ireland for the Avoidance of Double Taxation and
the Prevention of Fiscal Evasion with Respect to Taxes on Income and
on Capital Gains, S. Treaty Doc. No. 107–19, Art. 5, pp. 8–9 (2002)

Finally, *Bougas* does not control the meaning of §1348. In that case, we construed a now-repealed venue provision, which stated that actions against national banking associations could be filed "in any State, county, or municipal court in the county or city in which said association [was] located." 434 U. S., at 35–36 (quoting 12 U. S. C. §94 (1976 ed.)). We held that, for purposes of this provision, a national bank was located, and venue was therefore proper, in any county or city where the bank maintained a branch office. 434 U. S., at 44–45. True, under the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read "'as if they were one law.'" *Erlenbaugh* v. *United States,* 409 U. S. 239, 243 (1972) (quoting *United States* v. *Freeman,* 3 How. 556, 564 (1845)). But venue and subject-matter jurisdiction are not concepts of the same order. Venue is largely a matter of litigational convenience; accordingly, it is waived if not timely raised. See, *e.g., Heckler* v. *Ringer,* 466 U. S. 602, 638, n. 25 (1984); Fed. Rule Civ. Proc. 12(h)(1). Subject-matter jurisdiction, on the other hand, concerns a court's competence to adjudicate a particular category of cases; a matter far weightier than venue, subject-matter jurisdiction must be considered by the court on its own motion, even if no party raises an objection. See, *e.g., Mansfield, C. & L. M. R. Co.* v. *Swan,* 111 U. S. 379,

––––––––––

("For the purposes of this Convention, the term 'permanent establishment' means a fixed place of business through which the business of an enterprise is wholly or partly carried on . . . ."). Given the character of the proceedings covered by the first paragraph of §1348, see *supra,* at 7, one might read "established" as referring to the bank's main office as set forth in its articles of association. Other readings mentioned in Court of Appeals opinions are the bank's principal place of business and the place listed in the bank's organization certificate. See *Horton* v. *Bank One, N. A.,* 387 F. 3d 426, 434 (CA5 2004); *Firstar Bank, N. A.* v. *Faul,* 253 F. 3d 982, 992 (CA7 2001). Because this issue is not presented by the parties or necessary to today's decision, we express no opinion on it. Cf. *ibid.*

382 (1884); Fed. Rule Civ. Proc. 12(h)(3).

Cognizant that venue "is primarily a matter of choosing a convenient forum," *Leroy* v. *Great Western United Corp.,* 443 U. S. 173, 180 (1979), the Court in *Bougas* stressed that its "interpretation of [the former] §94 [would] not inconvenience the bank or unfairly burden it with distant litigation," 434 U. S., at 44, n. 10. Subject-matter jurisdiction, however, does not entail an assessment of convenience. It poses a "whether," not a "where" question: Has the Legislature empowered the court to hear cases of a certain genre? See *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.,* 308 U. S. 165, 168 (1939) ("This basic difference between the court's power and the litigant's convenience is historic in the federal courts."). Thus, the considerations that account for our decision in *Bougas* are inapplicable to §1348, a prescription governing subject-matter jurisdiction, and the Court of Appeals erred in interpreting §1348 *in pari materia* with the former §94.

Significantly, this Court's reading of the venue provision in *Bougas* effectively aligned the treatment of national banks for venue purposes with the treatment of state banks and corporations. For venue in suits against state banks and other state-created corporations typically lies wherever those entities have business establishments. See 19 C. J. S., Corporations §717(d), p. 374, n. 30 (1990) (under typical state venue statutes, "[v]enue in action against domestic corporation can be laid in any county where corporation maintains branch office"). By contrast, the Court of Appeals' decision in the instant case severely constricts national banks' access to diversity jurisdiction as compared to the access available to corporations generally. For purposes of diversity, a corporation surely is not deemed a citizen of every State in which it maintains a business establishment. See *Pennsylvania R. Co.* v. *St. Louis, A. & T. H. R. Co.,* 118 U. S. 290, 295–296 (1886). Rather, under 28 U. S. C. §1332(c)(1), a corporation is

"deemed to be a citizen" only of "any State by which it has been incorporated" and "of the State where it has its principal place of business."  Accordingly, while corporations ordinarily rank as citizens of at most 2 States, Wachovia, under the Court of Appeals' novel citizenship rule, would be a citizen of 16 States.  See FDIC Institution Directory, available at http://www2.fdic.gov/idasp/ main.asp.[9]  *Bougas* does not call for this anomalous result.

## V

To summarize, "located," as its appearances in the banking laws reveal, see *supra*, at 8–9, is a chameleon word; its meaning depends on the context in and purpose for which it is used.

In the context of venue, "located" may refer to multiple places, for a venue prescription, *e.g.*, the current and former 12 U. S. C. §94, presupposes subject-matter jurisdiction and simply delineates *where* within a given judicial system a case may be maintained.  See, *e.g.*, 28 U. S. C. §1391(c) (for venue purposes, "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced").

---

[9]To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business.  See *Horton*, 387 F. 3d, at 431, and n. 26; *Firstar Bank, N. A.*, 253 F. 3d, at 993–994.  Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business."  28 U. S. C. §1332(c)(1) (emphasis added).  The counterpart provision for national banking associations, §1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located."  The absence of a "principal place of business" reference in §1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

In contrast, in §1348, "located" appears in a prescription governing not venue but federal-court subject-matter jurisdiction. Concerning access to the federal court system, §1348 deems national banks "citizens of the States in which they are respectively located." There is no reason to suppose Congress used those words to effect a radical departure from the norm. An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State. See *Newman-Green, Inc.* v. *Alfonzo-Larrain,* 490 U. S. 826, 828 (1989) (an individual is deemed a citizen of the State of her domicil); *Williamson* v. *Osenton,* 232 U. S. 619, 625 (1914) (domicil is the "technically preeminent headquarters" of a person; "[i]n its nature it is one"). Similarly, a corporation's citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business. §1332(c)(1). It is not deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction. Reading §1348 in this context, one would sensibly "locate" a national bank for the very same purpose, *i.e.*, qualification for diversity jurisdiction, in the State designated in its articles of association as its main office.

Treating venue and subject-matter jurisdiction prescriptions as *in pari materia*, 388 F. 3d, at 422–423, the Court of Appeals majority overlooked the discrete offices of those concepts. See *supra*, at 11–12; cf. Cook, "Substance" and "Procedure" in the Conflict of Laws, 42 Yale L. J. 333, 337 (1933) ("The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against."). The resulting Fourth Circuit decision rendered national banks singularly disfavored corporate bodies with regard to their access to fed-

eral courts. The language of §1348 does not mandate that incongruous outcome, nor does this Court's precedent.

*  *  *

For the reasons stated, the judgment of the United States Court of Appeals for the Fourth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS took no part in the consideration or decision of this case.