NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1214
_____

LOUIS SPANO,

Appellant

v.

JP MORGAN CHASE BANK, NA,

Appellee
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-04055)
District Judge:  Hon. Dennis M. Cavanaugh
_____

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2013

Before:  SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: March 13, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Louis Spano appeals an order of the United States District Court for the District of

New Jersey granting summary judgment in favor of JP Morgan Chase Bank, N.A.

("Chase") on his claims of wrongful discharge, breach of contract, unjust enrichment,

interference with economic advantage, and trade libel. Spano contends that the District Court erred in applying the summary judgment standard and ignored numerous issues of material fact. For the following reasons, we will affirm.

## I.       Background

Spano is a citizen of New Jersey and has worked as a residential mortgage loan officer at several financial institutions there, including Columbia Federal Savings Mortgage Company ("CFS") and Wells Fargo Home Mortgage. Chase is a national bank with its main office in Ohio and licensed to do business in New Jersey, where it provides various financial services that include underwriting, originating, and servicing commercial and residential mortgages. Chase hired Spano in May 2006.

While at CFS, Spano established a relationship with Metro Homes ("Metro"), a real estate developer in New Jersey. Metro treated Spano as its "recommended lender," referring all of its customers to him for mortgage financing. (App. at 453-54.) Spano maintained his relationship with Metro when he subsequently went to work for Wells Fargo.

In early 2006, Chase offered Spano a position as a loan officer. Spano accepted the offer in March of that year, and his employment began on May 8. His employment was governed by Chase's "Compensation Plan and Policy Statement" and its "Terms of Agreement – Retail Loan Officer" (together the "Compensation Plan"). The Compensation Plan provided that Spano's employment was "at-will" and that "[n]othing contained in [the] Plan is intended to create a contract of employment or alter the at-will nature of [his] employment." (App. at 146-47.) On March 14, 2006, Chase and Spano

2

signed an agreement setting forth his individual compensation package (the "March Agreement"), which provided for a monthly "draw" against his commissions with "additional compensation" contingent upon him reaching certain loan volumes. However, the March Agreement omitted the start and end dates for the monthly draw. On May 3, 2006, the parties therefore signed a revised agreement (the "May Agreement"), which established that he would receive the monthly draw for the twelve months from May 8, 2006, to May 8, 2007. [1]

As Spano was joining Chase, Metro was seeking to terminate its relationship with Wells Fargo and to establish a relationship with a new bank. It began discussions with Chase concerning the creation of a joint venture mortgage company in which each would own half of the company, would share the costs of operations, and would split commissions.

In or about January 2008, Chase began to receive complaints about Spano's sales practices and customer service from individual home buyers, from real estate agents, and from others who had worked with Spano. At some point, Metro asked that he be removed from its account. Spano's immediate supervisor at Chase met with him in February 2008 and discussed the complaints, and Spano agreed to work toward remedying the situation. However, Chase continued to receive complaints about him, and Spano's supervisor issued him a written warning the next month based on, among other things, complaints about not returning customers' phone calls and not

---

[1] The May Agreement was subsequently modified to reflect changes in Spano's compensation, but the at-will nature of his employment remained unchanged.

communicating changes in interest rates. That warning also stated that the next step in the disciplinary process would be termination. In May 2008, Metro informed Chase of additional problems with Spano. On the recommendation of the regional manager responsible for the area in which Spano worked, Chase terminated his employment that same month.

Spano filed suit in the Superior Court of New Jersey, Law Division, Bergen County, and, in his July 23, 2009 Amended Complaint, raised claims of wrongful discharge, breach of contract, unjust enrichment, interference with economic advantage, and trade libel. Chase removed the case to the United States District Court for the District of New Jersey. Following discovery, the District Court entered an order granting summary judgment in favor of Chase and denying partial summary judgment to Spano.

Spano then filed this timely appeal.

## II.    Discussion[2]

Spano argues that the District Court misapplied the standard for summary judgment by ignoring numerous issues of material fact. Specifically, he contends that

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the matter is between citizens of different states. For diversity purposes, Chase is citizen of Ohio because it is a "national bank" and its main office, as set forth in its articles of incorporation, is located in that state. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306-07 (2006). Spano is a citizen of New Jersey. We have jurisdiction under 28 U.S.C § 1291. "We exercise plenary review of a district court's grant of summary judgment … ." *Powell v. Symons*, 680 F.3d 301, 306 (3d Cir. 2012). "Summary judgment is appropriate where the Court is satisfied 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

4

there is a sufficient basis in the pleadings, affidavits, and other evidence to make a prima facie case for each of his claims. He is wrong.

A.   *Wrongful Discharge*

Spano says that there is an issue of material fact as to whether he was properly terminated. In New Jersey, employees may be fired "for good reason, bad reason, or no reason at all under the employment-at-will doctrine." *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552 (N.J. 1994). Here, the Compensation Plan specifically stated that Spano was an at-will employee who could be terminated with or without cause, and he himself conceded that point during his deposition. It is therefore irrelevant whether Chase terminated Spano with or without cause. Accordingly, the District Court properly granted summary judgment to Chase on the wrongful termination claim.

B.   *Breach of Contract*

Spano claims that Chase breached the terms of the May Agreement because it failed to pay him the additional incentive compensation provided for in that agreement.[3] It is well-established that "the essential elements of a cause of action for a breach of contract[] [are] a valid contract, defective performance by the defendant, and resulting

---

[3] Spano also argues, as he did in the District Court, that the March Agreement, the terms of which he alleges Chase also breached, is the operative document because he was fraudulently induced into executing the May Agreement with promises of additional compensation in connection with the proposed joint venture between Chase and Metro. That argument, however, is based only on inadmissible parol evidence. *See Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1235 (N.J. Super. Ct. 1991) (explaining that "evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing" that represents a complete and accurate integration of a contract (internal quotation marks omitted)). Spano cannot overcome the parol evidence rule by relying on a fraudulent inducement theory because he has not provided evidence to support that theory.

5

damages." *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. 1985)).

"[W]here the terms of a contract are clear and unambiguous[,] there is no room for interpretation or construction and courts must enforce those terms as written." *Impink ex rel. Baldi v. Reynes*, 935 A.2d 808, 812 (N.J. Super. Ct. 2007) (internal quotation marks omitted).

Applying those principles, the District Court correctly rejected Spano's breach of contract claim. The May Agreement provided that Spano would receive commissions at a higher rate if he originated a specified volume of mortgage loans that closed during the twelve months following the execution of the agreement. The only evidence that Spano had met that target was an expert report that did not contain the closing dates of the mortgage loans he originated. Also, Spano's expert admitted that some of the loans necessary to reach the enhanced compensation target closed after the end of the relevant period. In the absence of any other evidence that Spano was entitled to the additional compensation set forth in the May Agreement, Chase was entitled to summary judgment on Spano's breach of contract claim.

C.    *Unjust Enrichment*

Spano argues that Chase was unjustly enriched by the value of the Metro account, which he had brought with him when he commenced his employment at Chase. Unjust enrichment is a quasi-contractual remedy that is imposed "for reasons of justice," to prevent "unconscionable benefit or advantage." *Borough of W. Caldwell v. Borough of Caldwell*, 138 A.2d 402, 412 (N.J. 1958) (internal quotation marks omitted). A claim of unjust enrichment will not stand when "an express contract exists concerning the

6

identical subject matter." *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983). In this case, Spano's compensation was governed by the May Agreement, which was still in force when he was terminated. That agreement set forth all of the compensation that Spano was entitled to receive for his work with Metro and therefore concerns the "identical subject matter" of his unjust enrichment claim. Consequently, he cannot seek recovery from Chase on a theory of unjust enrichment, and the District Court properly granted summary judgment to Chase on that claim.

D.      *Interference with Economic Advantage; Trade Libel*

Finally, Spano argues that the District Court erred when it concluded that Chase had not interfered with his economic advantage by interfering with his management of the Metro account, and had not libeled him to that client.

A claim of interference with economic advantage requires the plaintiff to make a prima facie showing that (1) he had "some reasonable expectation of economic advantage," (2) defendant's interference was "done intentionally with malice," (3) "the interference caused the loss of the prospective gain," and but for defendant's interference, "there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits," and (4) "the injury caused damage." *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989) (internal quotation marks omitted). At a minimum, Spano has failed to establish the second and third elements of his tortious interference claim. Nothing in the record suggests that any of Chase's actions involving his relationship with Metro were malicious. Moreover, there is no evidence that Spano would have retained the Metro account but for the actions

of Chase, given that Metro had specifically asked that he be removed from its account as a result of customer complaints. The District Court thus correctly granted summary judgment to Chase on that claim.

To prove that he has been a victim of trade libel, a plaintiff must prove, *inter alia*, that the defendant made a false statement about him to a third party. *McLaughlin v. Rosanio, Bailets & Talamo*, 751 A.2d 1066, 1071 (N.J. Super. Ct. 2000). The only statements to which Spano points in support of this claim are Chase's communications to Metro regarding customer complaints. Those were statements of opinion by Spano's own clients, and he has neither alleged that they were Chase's own statements nor that the complaints were false. As a result, Spano has not provided evidence of a required element of his trade libel claim, and the District Court properly granted summary judgment to Chase on that claim as well.

### III.   Conclusion

For the foregoing reasons, we will affirm the District Court's judgment.