**ATLANTIC ENERGY GROUP, LTD., Plaintiff,**

v.

**NORTHEAST DIRECT CORP., Hector Reyes, and Wells Fargo Bank, N.A., Defendants.**

**Case No. 2:14–cv–01692–PMD.**

United States District Court, D. South Carolina, Charleston Division.

Signed Sept. 22, 2014.

---

Mark W. McKnight, Charleston, SC, for Plaintiff.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court upon Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss"). For the

reasons that follow, the Court grants Wells Fargo's Motion to Dismiss.

### BACKGROUND [1]

This case arises out of a Sales and Purchase Agreement ("Purchase Agreement") between Plaintiff Atlantic Energy Group, Ltd. ("Plaintiff") and Defendant Northeast Direct Corp. ("Northeast Direct"). Pursuant to the Purchase Agreement, Plaintiff agreed to pay Northeast Direct to procure diesel fuel for Plaintiff for resale to end users. Section 8.2 of the Purchase Agreement required both Parties to "[l]odge contracts with their respective banks," Purchase Agreement § 8.2, ECF No. 1–1, which, for both Parties, was Wells Fargo, *id.* § 14. Section 15.1 of the Purchase Agreement provides that Northeast Direct's "bank will issue a Performance Bond for the Charter Vessel Payment. The bond is for the Initial Payment of twenty-five percent of the Charter Vessel cost as per the Commercial Invoice." *Id.* § 15.1. The total charter-vessel cost per the Purchase Agreement was $1,600,000.00, and the performance bond to be issued by Northeast Direct's bank, Wells Fargo, was to be $400,000.00.

Pursuant to the Purchase Agreement, Plaintiff, through agent JHH Investments, Inc., executed an "Outgoing Wire Transfer Request," authorizing the Wells Fargo branch located on James Island, South Carolina, to transfer $400,000.00 to the Wells Fargo branch in New York where Northeast Direct did business. In the "Beneficiary/Recipient Information" section of the Outgoing Wire Transfer Request form, a note in the box for "Information/Comments" states: "Deposit for shipping per contract with Atlantic Ener-

---

1. These facts, drawn from Plaintiff's Amended Complaint, must be treated as true for purposes of Rule 12(b)(6). *Kensington Volunteer*

*Fire Dep't, Inc. v. Montgomery Cnty., Md.,* 684 F.3d 462, 467 (4th Cir.2012).

gy Group, Ltd." Wire Request 1, ECF No. 8–1. Wells Fargo processed the wire transfer and made the funds available to Northeast Direct. Thereafter, Northeast Direct failed to procure the first shipment of diesel fuel as provided in the Purchase Agreement.[2]

On April 28, 2014, Plaintiff filed this suit against Defendants Northeast Direct and Wells Fargo. Plaintiff asserted causes of action against Northeast Direct for breach of contract and for failure to procure a performance bond. Plaintiff asserted a sole count of negligence against Wells Fargo. In that count, Plaintiff alleges that a copy of the Purchase Agreement between Northeast Direct and Plaintiff was to be lodged with each Party's bank. Plaintiff further alleges that it provided a copy of the Purchase Agreement to its Wells Fargo branch in South Carolina and that Northeast Direct provided a copy to its Wells Fargo branch in New York. Plaintiff alleges that the Purchase Agreement set forth the terms and conditions under which Wells Fargo could make the funds available to Northeast Direct including, among others, the issuance by Wells Fargo of a performance bond for the vessel deposit. Wells Fargo neither issued a performance bond for the vessel deposit nor confirmed that all documentation required under the Purchase Agreement was actually in place before disbursing the funds. Plaintiff alleges that Wells Fargo's negligence caused or contributed to Plaintiff's loss.

Wells Fargo filed the instant Motion to Dismiss on June 20, 2014. On July 15, 2014, Plaintiff filed its Response. On July 25, 2014, Plaintiff filed an Amended Complaint, adding Hector Reyes ("Reyes"), the chief executive officer of Northeast Direct, as a party and alleging one count of fraud and one count of negligence against him. The Amended Complaint also added a claim against Wells Fargo for breach of fiduciary duty. Plaintiff alleges that it reposed a special trust and confidence in Wells Fargo that the bank would adhere to the requirements of the Purchase Agreement between Plaintiff and Northeast Direct in processing the wire transfer. Wells Fargo allegedly breached its fiduciary duty to Plaintiff when it processed the wire transfer without either ensuring that it had adhered to the Purchase Agreement's requirement that it provide a performance bond or advising Plaintiff that a performance bond had not been issued. Plaintiff alleges that only Wells Fargo would have had knowledge of the status of the performance bond at the time the wire transfer was authorized.

Also on July 25, 2014, Plaintiff requested entry of default against Northeast Direct. The Clerk entered default as to Northeast Direct on July 28, 2014. On July 29, 2014, Wells Fargo filed its Reply, in which it addresses the new claim asserted in the Amended Complaint. The Motion to Dismiss has been fully briefed and is ripe for review.

## JURISDICTION

This Court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1332, as there is complete diversity of the Parties and the amount in controversy exceeds $75,000.[3] Plaintiff is a West In-

---

2. The Purchase Agreement is attached to Plaintiff's Amended Complaint, and the Outgoing Wire Transfer Request form is attached to Wells Fargo's Motion to Dismiss. Both documents are authentic and integral to the Amended Complaint and thus can be consid- ered by the Court without it first converting this Motion to Dismiss into one for summary judgment. *See Kensington Volunteer Fire Dep't, Inc.*, 684 F.3d at 467.

3. On September 8, 2014, the Court issued an Order directing the Parties to file supplemen-

dies corporation and has its principal place of business in Nevis, West Indies. Northeast Direct is a Delaware corporation with its principal place of business in New York. Reyes is a citizen of New York. Wells Fargo is organized pursuant to United States federal law, and its main office is in South Dakota.[4] Finally, Plaintiff seeks damages in excess of $75,000. Therefore, this Court has diversity jurisdiction over this case.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* More specifically, to state a facially plausible claim the complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Thus, a complaint must simply provide the defendant with "fair notice" of the claim and the grounds upon which the plaintiff seeks to obtain relief. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.2011).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678, 129 S.Ct. 1937. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937. Thus, "[i]n ruling on a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't*, 684 F.3d at 467 (internal quotation marks omitted).

## ANALYSIS

In its Motion to Dismiss, Wells Fargo argues that Plaintiff's claims against the

---

tal memoranda on the issue of citizenship by September 18, 2014. The Court received memoranda from Plaintiff and Wells Fargo.

**4.** National banks are deemed citizens of the States in which they are respectively located. 28 U.S.C. § 1348. For the purpose of diversity jurisdiction, a national bank is "located" in the State designated in its articles of association as its main office. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006).

bank for negligence and breach of fiduciary duty are preempted by Article 4A of the Uniform Commercial Code ("U.C.C."). Wells Fargo contends that the essence of Plaintiff's claim is that even though Plaintiff signed the Outgoing Wire Transfer Request form, Wells Fargo should not have processed the wire. Wells Fargo argues that because the claims arise out of the bank's processing of a funds transfer, the claims are governed solely by Article 4A. The Court agrees.

Article 4A of the South Carolina U.C.C. governs a specialized method of payment known either as a funds transfer or a wholesale wire transfer. S.C.Code Ann. § 36–4A–102 cmt. A funds transfer is a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order" and is completed "by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." Id. § 36–4A–104. A payment order is "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay ... a fixed or determinable amount of money to a beneficiary ... [where, among other requirements,] the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender." Id. § 36–4A–103(a)(1). The "sender" is "the person giving instruction to the receiving bank"; the "receiving bank" is "the bank to which

the sender's instruction is addressed"; the "beneficiary" is "the person to be paid by the beneficiary's bank"; and the "beneficiary's bank" is "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order." Id. § 36–4A–103(a)(2)–(5). Under these definitions, Plaintiff was the sender of the Outgoing Wire Transfer, Wells Fargo (South Carolina branch) was the receiving bank, Wells Fargo (New York branch) was the beneficiary bank, and Northeast Direct was the beneficiary.[5]

Prior to the drafting of Article 4A, judges had to resolve disputes arising out of wire transfers "by referring to general principles of common law or equity [or] ... by analogy to rights and obligations in negotiable instrument law or the law of check collection." S.C.Code Ann. § 36–4A–102 cmt. Because these judicial attempts to define rights and obligations in funds transfers had "not been satisfactory," the drafters of Article 4A made "a deliberate decision ... to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment." Id. Moreover:

> [a] deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks, and establish limits on liability, rather than to rely on broadly stated, flexible principles. In the draft-

---

**5.** With respect to choice of law, U.C.C. § 4A–507(a) provides that the "rights and obligations between the sender of a payment order [Plaintiff] and the receiving bank [Wells Fargo] are governed by the law of the jurisdiction in which the receiving bank is located [South Carolina]" while the "rights and obligations between the beneficiary's bank [Wells Fargo] and the beneficiary [Northeast Direct] are governed by the law of the jurisdiction in which the beneficiary's bank is located [New York]." U.C.C. § 4A–507(a)(1)–(2). Wells

Fargo is both the "receiving bank" and the "beneficiary bank" in this case. Because Plaintiff's claims appear to arise out of its relationship with Wells Fargo as the sender of a payment order, South Carolina law should be applied. However, because both South Carolina and New York have adopted Article 4A, the Court's finding with respect to preemption is supported by the law in both States. See S.C.Code Ann. § 36–4A–102; N.Y. U.C.C. Law § 4–A–102 (McKinney).

ing of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.

*Id.*

The rules in Article 4A "represent a careful and delicate balancing" of the competing interests involved in funds transfers—"those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest." *Id.* Article 4A is "intended to be the *exclusive means* of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article." *Id.* (emphasis added). "Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." *Id.*

Courts have interpreted the language in this Official Comment "to support the proposition that Article 4A precludes common law claims when such claims would impose liability inconsistent with the rights and liabilities expressly created by Article 4[A]." *ReAmerica, S.A. v. Wells Fargo Bank Int'l,* 577 F.3d 102, 106 (2d Cir.2009) (internal quotation marks omitted); *see also Fitts v. AmSouth Bank,* 917 So.2d 818, 824 (Ala.2005) ("This language suggests that if the situation made the basis of a dispute is addressed in Article 4A, then the provisions of Article 4A provide the exclusive rights and remedies of the parties involved."). Moreover, the South Carolina Supreme Court has explained that "[o]nly where the U.C.C. is incomplete

does the common law provide applicable rules." *Hitachi Elec. Devices (USA), Inc. v. Platinum Techs., Inc.,* 366 S.C.163, 621 S.E.2d 38, 41 (2005) (citing S.C.Code Ann. § 36–1–103 ("Unless displaced by the particular provisions of this act, the principles of law and equity ... shall supplement its provisions.")). "Displacement occurs when one or more particular provisions of the U.C.C. comprehensively address a particular subject." *Id.*

Article 4A governs the issuance and acceptance of payment orders, the execution of a sender's payment order by the receiving bank, and payment. The Amended Complaint alleges that Wells Fargo was negligent and breached its fiduciary duties to Plaintiff when it processed the wire transfer without first disclosing to Plaintiff that it had neither issued a performance bond to Northeast Direct nor confirmed that all documentation required under the Purchase Agreement was in place. Thus, Plaintiff claims that it suffered damages as a result of Wells Fargo's conduct in the processing of Plaintiff's Outgoing Wire Transfer Request. The Court concludes that these allegations fall within the comprehensive scheme set out in Article 4A.

Section 36–4A–212 addresses a receiving bank's liabilities and duties:

> Liability based on acceptance arises only when acceptance occurs as stated in Section 36–4A–209, and liability is limited to that provided in this chapter. A receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer, and the bank owes no duty to any party to the funds transfer except as provided in this chapter or by express agreement.

S.C.Code Ann. § 36–4A–212. This section "comprehensively address[es]" the duties and liabilities of a receiving bank to the parties of the funds transfer, thereby dis-

placing "principles of law and equity." *Hitachi Elec. Devices,* 621 S.E.2d at 41 (citing S.C.Code Ann. § 36–1–103). Thus, unless altered by express agreement between Plaintiff and Wells Fargo, Wells Fargo's duties to Plaintiff are only those provided in Article 4A. *See Grain Traders, Inc. v. Citibank, N.A.,* 160 F.3d 97, 103 (2d Cir.1998) (finding that section 4A–212 "preclude[s] common law claims when such claims would impose liability inconsistent with the rights and liabilities expressly created by Article 4–A.").

The Amended Complaint does not support a finding that Wells Fargo owed Plaintiff any duty beyond those provided in Article 4A. Plaintiff does not allege that there was an express agreement altering Wells Fargo's duties, and the Amended Complaint does not contain a claim against Wells Fargo for breach of contract. *Cf. Fischer & Mandell, LLP v. Citibank, N.A.,* 632 F.3d 793, 797 (2d Cir.2011) (holding that "a common law breach of contract claim is not preempted by Article 4–A to the extent the provisions are not inconsistent with Article 4–A or they fall within one of the areas where a variance is permitted."). The only express agreement between Plaintiff and Wells Fargo contained in the record is the Outgoing Wire Transfer Request, and that document does not contain any express agreement by Wells Fargo to alter its duties under Article 4A. Therefore, the Court concludes that Plaintiff is limited to the remedies set forth in Article 4A and that its common law claims against Wells Fargo for negligence and breach of fiduciary duty are thus preempted. Accordingly, the Court dismisses Plaintiff's claims against Wells Fargo.[6]

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Wells Fargo's Motion to Dismiss is **GRANTED**. The claims against Wells Fargo are **DISMISSED WITHOUT PREJUDICE**.

**AND IT IS SO ORDERED.**

---

6. Because the Court concludes that Plaintiff's claims against Wells Fargo are preempted by the U.C.C., the Court does not reach Wells Fargo's alternative argument that Plaintiff failed to plead all of the required elements of its common law claims.