**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT ROUSE, an individual; VICTORIA ROUSE, an individual, *Plaintiffs-Appellees*, <br><br> v. <br><br> WACHOVIA MORTGAGE, FSB, a Division of Wells Fargo Bank NA, FKA World Savings Bank, *Defendant-Appellant*. | No. 12-55278 <br><br> D.C. No. 5:11-cv-00928-DMG-DTB <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Submitted November 5, 2013[*]
Pasadena, California

Filed March 27, 2014

Before: M. Margaret McKeown, Ronald M. Gould,
and Jay S. Bybee, Circuit Judges.

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2). Plaintiffs-Appellees did not submit a responsive brief, did not return the acknowledgment of hearing notice, and did not respond to inquiries from the Clerk's office regarding appearance at argument.

Opinion by Judge McKeown;
Dissent by Judge Gould

**SUMMARY**[**]

**Diversity Jurisdiction**

The panel reversed the district court's order remanding the case to California Superior Court for lack of diversity jurisdiction.

The panel held that under 28 U.S.C. § 1348 a national bank is a citizen only of the state in which its main office is located. The panel concluded that the district court had diversity jurisdiction because there was complete diversity between the plaintiffs, citizens of California, and Wells Fargo Bank, N.A., a citizen of South Dakota.

Judge Gould dissented because he would view Wells Fargo as a citizen of California for diversity purposes, and affirm the district court.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mark T. Flewelling, Robert C. Little, and Yaw-Jiun Wu, Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, Pasadena, California; Robert A. Long, Jr., Covington & Burling LLP, Washington, D.C., for Defendant-Appellant.

No appearance for Plaintiffs-Appellees.

**OPINION**

McKEOWN, Circuit Judge:

One might think that 150 years after Congress established national banks in 1863, the question of their citizenship for purposes of diversity jurisdiction would be well established. Not so. The relevant statute is ambiguous, the courts are split on the question, and the Supreme Court has not squarely decided the issue.

Under 28 U.S.C. § 1348, national banking associations are "citizens of the States in which they are respectively located." *Id.* The critical word—"located"—is not defined in the statute or elsewhere. Nor does its meaning flow easily from dictionary definitions or interpretive canons. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 314–17 (2006). Looking to the Supreme Court's treatment of the issue and to the history and sequence of the enactment and amendment of the statute, we conclude that, under § 1348, a national bank is "located" only in the state designated as its main office. *See id.* at 314, 318–19.

## FACTUAL AND PROCEDURAL BACKGROUND

Robert and Victoria Rouse (collectively, "the Rouses") filed suit against Wells Fargo Bank, N.A., its Wachovia Mortgage division (collectively, "Wells Fargo"), and NDeX West LLC, in the Superior Court of the State of California. The original complaint raised multiple causes of action under state and federal law pertaining to the Rouses' home loan and deed of trust. Wells Fargo removed the action to district court, asserting subject matter jurisdiction on the basis of federal questions and diversity of citizenship. *See* 28 U.S.C. §§ 1331, 1332(a). Wells Fargo filed a motion to dismiss the complaint for failure to state a claim, in which NDeX West joined. The district court granted the motion and dismissed the complaint with leave to amend.

The Rouses filed their first amended complaint, raising only state law claims. Following an order to show cause why the case should not be remanded to state court for lack of diversity jurisdiction, the district court held that national banks are citizens of the state where their principal place of business is located as well as of the state where their main office is located as designated in their articles of association. Because Wells Fargo's main office is in South Dakota and its principal place of business is in California, and the Rouses are citizens of California the district court remanded the case to California Superior Court for lack of jurisdiction.

## ANALYSIS

The dispositive issue in this appeal is whether, under 28 U.S.C. § 1348, a national bank is a citizen of both the state in which its principal place of business is located and the state where its main office is located as designated in the bank's

articles of association.[1]  We review de novo this issue of statutory construction.  *See United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012).

We conclude that, under 28 U.S.C. § 1348, a national bank is a citizen only of the state in which its main office is located.  Hence, the district court had diversity jurisdiction because there was complete diversity between the Rouses, citizens of California, and Wells Fargo, a citizen of South Dakota.  We therefore reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## I.   The Citizenship of National Banks: 28 U.S.C. § 1348

Wells Fargo is a national bank, a "corporate entit[y] chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury." *Wachovia Bank*, 546 U.S. at 306.  Unlike state-chartered banks or other corporations whose citizenship is governed by 28 U.S.C. § 1332[2] the citizenship of nationally chartered banks is governed by 28 U.S.C. § 1348, which provides in pertinent part: "All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the

---

[1] 12 U.S.C. § 22 (Second) requires that a national bank designate "[t]he place where its operations of discount and deposit are to be carried on," which serves as the bank's "main office." *Wachovia Bank*, 546 U.S. at 307 n.1.

[2] For diversity purposes, a corporation—which includes state-chartered banks—is deemed to be a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1); *Wachovia Bank*, 546 U.S. at 306.

States in which they are respectively located." 28 U.S.C. § 1348.

The sparse text of the statute offers no definitions. Our analysis focuses on the meaning of the word "located." Where a statute does not define a key term, we look to the word's ordinary meaning. *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1181 (9th Cir. 2013). However, the Supreme Court has held, in the context of § 1348, that the word is ambiguous on its face.[3] *Wachovia Bank*, 546 U.S. at 313–14 ("[T]he term 'located,' as it appears in the National Bank Act, has no fixed, plain meaning."). As the Supreme Court noted, "'located,' as its appearance in the banking laws reveal . . . is a chameleon word; its meaning depends on the context in and purpose for which it is used." *Id*. at 318. The message is clear: we must look beyond the plain text of the statute and the word's ordinary meaning to discern the meaning of the word "located" for purposes of § 1348.

## II. *Wachovia Bank, N.A. v. Schmidt*

In *Wachovia Bank*, the Supreme Court addressed a different but related issue: whether a federally chartered

---

[3] In interpreting the term "located" in § 1348, the Court concluded that certain canons of statutory construction did not aid its interpretation. For example, the Court determined that the canon that different jurisdictional words should be given different meanings does not apply to § 1348 because the use of "established" versus "located" is likely a "coincidence of statutory codification." *Wachovia Bank*, 546 U.S. at 314. The Court also resolved that "located" should not be interpreted consistent with the use of "located" in a venue statute because the venue statute and the jurisdiction statute have two distinct purposes: to provide for convenience to litigants and to limit the power of the federal courts, respectively. *Id.* at 315–19.

national bank is a citizen of every state where it operates a branch in addition to the state where its main office is designated. 546 U.S. at 306. The court held "that a national bank, for § 1348 purposes, is a citizen of the state in which its main office, as set forth in its articles of association, is located." *Id*. at 307. Although this holding appears to be a categorical statement with respect to § 1348, we acknowledge that it was rendered in response to a slightly different question than we face here.

The Court granted certiorari in *Wachovia Bank* to resolve a circuit split over whether national banks are citizens of every state in which they operate a branch for purposes of diversity jurisdiction. Both the Fifth Circuit and the Seventh Circuit held that national banks are not "located" in every state where the bank has a branch. *Horton v. Bank One, N.A.*, 387 F.3d 426, 431 (5th Cir. 2004); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 993–94 (7th Cir. 2001). Both circuits reasoned that the legislative history of § 1348 and its predecessor statutes revealed Congress's intent to maintain jurisdictional parity between national and state banking associations by placing them on the same jurisdictional footing. *Horton*, 387 F.3d at 430–31; *Firstar*, 253 F.3d at 993. Although not referenced in *Wachovia Bank*, we held 50 years earlier in *American Surety Co. v. Bank of California*, that the Bank of California was "a citizen *only* of the state in which its principal place of business is located, the State of California" and that the bank was not a citizen of every state in which it operated a branch. 133 F.2d 160, 161–62 (9th Cir. 1943) (emphasis added). By contrast, the Fourth Circuit in the *Wachovia Bank* appeal held that a national bank is a citizen of the state in which its main office is located as well as every state in which it has a branch. 388 F.3d 414, 432 (4th Cir. 2004). The Second Circuit recognized the same in dicta. *See*

*World Trade Ctr. Props., LLC v. Hartford Fire Ins. Co.*, 345 F.3d 154, 161 (2d Cir. 2003).

The Supreme Court's holding in *Wachovia Bank* was largely reasoned from the conclusion that Congress intended to protect the right of national banks to remove cases to federal courts. *See* 546 U.S. at 307 ("Were we to hold . . . that a national bank is additionally a citizen of every State in which it has established a branch, the access of a [national] bank to a federal forum would be drastically curtailed. . . ."). *Wachovia Bank* did not address whether a national bank is also a citizen of the state where it has its principal place of business. The Court noted, however, that "one would sensibly 'locate' a national bank for . . . qualification for diversity jurisdiction, in the State designated in its articles of association as its main office." *Id.* at 318. The Court also stated that the omission of any reference to a national bank's principal place of business in § 1348 "may be of scant practical significance for, in almost every case . . . the location of a national bank's main office and of its principal place of business coincide." *Id.* at 317 n.9; *see Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 707–08 (8th Cir. 2011). This acknowledgment and discussion of the principal place of business issue strongly suggest that the Court did not overlook the issue of whether a national bank is a citizen of both the state in which its main office is located and the state where it maintains its principal place of business in crafting its clear and unqualified statement limiting citizenship for diversity jurisdiction purposes to a national bank's main office.

Following *Wachovia Bank*, the Eighth Circuit addressed the exact issue we confront in this appeal and held that a national bank is only a citizen of the state designated in its

articles of association as its main office. *WMR e-PIN*, 653 F.3d at 709; *see also McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212 (1st Cir. 2012) (finding diversity between an individual citizen of Massachusetts and Wells Fargo, N.A., because "Well[s] Fargo, a national bank, is a citizen of the state where it is 'located'; this is the State designated in its articles of association as its main office; and Wells Fargo is a citizen of South Dakota for diversity purposes." (internal citations and quotation marks omitted)); *Hargrow v. Wells Fargo Bank, N.A.*, 491 F. App'x 534, 536 (6th Cir. 2012) (holding that Wells Fargo is a citizen of South Dakota, where its main office is located, for diversity jurisdiction purposes); *Hicklin Eng'g L.C. v. Bartell*, 439 F.3d. 346, 348 (7th Cir. 2006) ("*Wachovia Bank* held that national banks are citizens only of the states in which their main offices are located. . . ."). Although agreeing in principle with the Seventh Circuit in *Firstar* and the Fifth Circuit in *Horton* that § 1348 and its statutory predecessors initially embodied Congress's intent to put national and state banks on the same jurisdictional footing, in *WMR e-PIN*, the Eighth Circuit held that jurisdictional parity did not survive a 1958 amendment to the general diversity jurisdiction statute, 28 U.S.C. § 1332(c)(1). *WMR e-PIN*, 653 F.3d at 707–10. The Eighth Circuit reasoned that if Congress intended jurisdictional parity to survive subsequent statutory amendments, it would have expressly indicated this intent. *Id.* at 709. The court concluded that the word "located," as used in the 1948 version of § 1348, could not mean both main office and principal place of business because citizenship for state-chartered corporations based on principal place of business did not exist until ten years later when Congress passed § 1332 in 1958. *Id.* at 708. We agree.

## III.    The Historical Landscape

Although we view the Supreme Court's declaration in *Wachovia Bank* on the scope of § 1348 to be definitive, the evolution of § 1348 and its interaction with § 1332(c)(1) also support our conclusion.

Beginning in 1882, in Congress's first treatment of jurisdiction for national banks, the statutory predecessor to the current § 1348 explicitly ensured jurisdictional parity between national banks and state-chartered banks. However, by 1887, Congress had abandoned jurisdictional parity between the two types of banks and reoriented the statutory predecessor to the current § 1348 to ensure jurisdictional parity between individual citizens and national banks. During this period, state-chartered banks were citizens only of the states by which they were incorporated; it was not until 1958 that Congress provided for dual citizenship for state-chartered banks according to their state of incorporation and their principal place of business. The history of the jurisdictional statutes, which we review below, is consistent with reading the Supreme Court's statement in *Wachovia Bank* to mean that, for all purposes under § 1348, a national bank is "located" only in the state in which its main office is located.

### A.  Section 1348 and its Statutory Predecessors

The first national banking act provided "[t]hat suits, actions, and proceedings by and against any [national banking association] under this act may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established." Act of Feb. 25, 1863, ch. 58, § 59, 12 Stat. 665, 681 (replaced 1864) (internal quotation marks omitted). In 1864, Congress added

that such suits could also be brought "in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases." Act of June 3, 1864, ch. 106, § 57, 13 Stat. 99, 116–17 (replaced 1875). By 1875, Congress had provided for removal of national bank cases from state to federal court under the theory that suits involving national banks necessarily arose under the federal laws. Act of Mar. 3, 1875, ch. 137, § 2, 18 Stat. 470, 470 (repealed 1882); *see Union Pac. Ry. Co. v. Myers*, 115 U.S. 1, 11 (1885).

Congress changed course in 1882 when it enacted the first statute specifying the state citizenship of national banks. Act of July 12, 1882, ch. 290, § 4, 22 Stat. 162, 163 (repealed 1887); *see Leather Mfrs.' Nat'l. Bank v. Cooper*, 120 U.S. 778, 780–81 (1887). The 1882 act provided:

> [T]he jurisdiction for suits hereafter brought by or against any association established under any law providing for national-banking associations . . . shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national-banking associations may be doing business when such suits may be begun.

Act of July 12, 1882, ch. 290, § 4, 22 Stat. 163. That act changed the jurisdictional landscape by "provid[ing], in clear and unmistakable terms, that the courts of the United States should not have *jurisdiction* . . . unless they would have jurisdiction under like circumstances of suits by or against a state bank doing business in the same state with the national

bank." *Cooper*, 120 U.S. at 781. Therefore, "national bank[s] [were] . . . placed before the law in this respect the same as a bank not organized under the laws of the United States." *Id.* The legislation plainly established a principle of jurisdictional parity with state-chartered banks and ended national banks' automatic qualification for federal question jurisdiction. *See id.* at 780.

But Congress amended the statute five years later. The 1887 law provided in relevant part:

> [A]ll national banking associations established under the laws of the United States shall . . . be deemed citizens of the States in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same State.

Act of Mar. 3, 1887, ch. 373, § 4, 24 Stat. 552, 554–55 (replaced 1888). This statute was considered a "revision[] to prescriptions on federal jurisdiction," *Wachovia Bank*, 546 U.S. at 310, because it removed language tying national bank jurisdiction to state bank jurisdiction. *See id.* at 310–11. This provision evokes the principle of jurisdictional parity: not parity between national and state banks, but between national banks and "*individual citizens*." *See* Act of Mar. 3, 1887, ch. 373, § 4, 24 Stat. 554–55 (emphasis added). Any contrary reading would render the last clause of the 1887 act surplusage because it was well established by 1882 that national banks did not automatically qualify for federal question jurisdiction solely because they were nationally chartered.

A year later, Congress revised the 1887 act by adding this caveat as a separate paragraph: "The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank." Act of Aug. 13, 1888, ch. 866, § 4, 25 Stat. 433, 436 (replaced 1911). This amendment clarified that federal courts retained federal question jurisdiction over national banks in two specific circumstances: (i) in suits by the United States or (ii) for winding up the bank's affairs. Only the 1882 act contained express language providing that national banks should be treated the same as identically situated state-chartered banks. The statutorily embodied principle of jurisdictional parity was not linked with state-chartered banks or other corporations. From a historical perspective, the decision to tie the citizenship of national banks to the citizenship of state-chartered banks—as the 1882 act did—bears no greater weight than tying the citizenship of national banks to the citizenship of natural persons—as the 1887 act and 1888 revision did.

Congress shifted gears again in 1911. The 1911 act provided, in relevant part, that "all national banking associations established under the laws of the United States shall, for the purposes of all other actions against them . . . be deemed citizens of the States in which they are respectively located." Act of Mar. 3, 1911, ch. 231, § 16, 36 Stat. 1087, 1093 (amended 1948). In *Herrmann v. Edwards*, the Supreme Court explained that the 1911 act maintained the limits on federal jurisdiction that Congress established in the 1887 act: federal question jurisdiction was available for suits by the United States or for winding up a bank's affairs, and diversity jurisdiction was available for all other suits with

national banks being "deemed citizens of the states in which they are respectively located." 238 U.S. 107, 113, 116–18 (1915) (quoting Act of Mar. 3, 1911, ch. 231, s. 16, 36 Stat. 1093). The Court's reasoning did not rely on analysis of jurisdiction for suits involving state-chartered banks; rather, its analysis focused on the availability of federal jurisdiction and reaffirmed the "fundamental principle," codified in the 1882 act, that "because a corporation was a national bank, created under an act [of] Congress, gave it no greater right to remove a case [to federal court] than if it had been organized under a state law." *Id.* at 111, 113. Therefore, to the extent that the 1887 and 1911 acts established any principle of jurisdictional parity, the statutes referred to federal question jurisdiction, not to diversity jurisdiction.

Congress made a final minor tweak to the statute in 1948. The 1948 act, which is presently codified at 28 U.S.C. § 1348, provides in relevant part that "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." Act of June 25, 1948, ch. 646, s. 1348, 62 Stat. 869, 934. As with the 1887 amendment and 1911 act, there is no mention whatsoever of jurisdictional parity.

## B.  Section 1332(c)(1)

Although Congress's last work on the citizenship of national banks came in 1948, a significant shift in diversity citizenship followed in 1958 with respect to state-chartered corporations, a category that includes state-chartered banks. Congress adopted a new provision that a state-chartered corporation is a citizen of both the state of incorporation and the state of its principal place of business. Act of July 25,

1958, Pub. L. No. 85-554, § 2, 72 Stat. 415 (codified at 28 U.S.C. § 1332(c)(1)).

As the Supreme Court recently explained, "[i]n 1928 [the Supreme] Court made clear that the 'state of incorporation' rule was virtually absolute." *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010). Objections to this rule started to percolate in the 1930s. *See id.* at 85–88. But Congress did not adopt the principal place of business test for state-chartered corporations until 1958. *Id.* at 88. Accordingly, in 1948—when Congress adopted the current version of § 1348—Congress knew that, outside of the bankruptcy context, state-chartered banks and other corporations were citizens of *only* the state by which they had been incorporated. To the extent that Congress intended to link implicitly national banks and state-chartered banks, it linked them together in a regime where state-chartered banks were citizens of only a single state.

In interpreting congressional intent, we look to the time of Congress's enactment of the legislation. *See MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 228 (1994) (noting that "the most relevant time for determining a statutory term's meaning" is when the statute became law). No principle of statutory interpretation suggests that we should look to a later-passed statute not involving national banks to divine congressional intent regarding a completely different statute passed ten years earlier. Such convoluted bootstrapping would defy common sense. To the extent Congress intended to provide for jurisdictional parity between nationally chartered and state-chartered banks, as the district court suggested, parity almost certainly meant that national banks were citizens of only one state because state-chartered banks were, at the time, citizens of only one state. More

importantly, had Congress wanted to assure a link to state-chartered banks, it knew how to do so explicitly, as it did in the 1882 act. Likewise, Congress undoubtedly understood how to define the citizenship of a federally chartered association as it did in 2006 with federal savings associations. *See* 12 U.S.C. § 1464(x) (providing that "[i]n determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office.").

We do not rewrite legislation in light of changed circumstances. Congress began its treatment of jurisdiction for national banks with a notion of jurisdictional parity that it later affirmatively deleted from the statute. Nothing in the current version of the statute or in its history suggests that Congress intended to revive the principle of jurisdictional parity between state-chartered banks and national banks. Indeed, interpreting "located," as used in § 1348, to refer to both a national bank's principal place of business and its main office would require a finding that jurisdictional parity between state-chartered banks and national banks is "an immutable principle that endures long after the statutes from which it arose have been amended and all references to it have been excised," which neither history nor precedent support. *See WMR e-Pin*, 653 F.3d at 708–09.

The Supreme Court's decision in *Wachovia Bank* and the history of the relevant legislation demonstrate that the current version of the statute does not include an ethereal incorporation of any principle of jurisdictional parity between state-chartered banks and national banks for suits asserting diversity as a basis for federal jurisdiction. The dissent offers

an attractive policy alternative. However, should Congress wish to link the jurisdiction for national and state banks, the statute can easily be amended. It is not our role to work a revision of the statute. We hold that, under § 1348, a national banking association is a citizen only of the state in which its main office is located. Accordingly, Wells Fargo is a citizen only of South Dakota, where its main office is located, and the district court's judgment to the contrary is reversed.

**REVERSED AND REMANDED.**

GOULD, Circuit Judge, dissenting:

I regret that I cannot agree with my colleagues on the proper disposition of this appeal. Rather, to me it seems that we should view Wells Fargo as a citizen of California for diversity purposes, and affirm the district court.

Like the district court, I would rely on the "mode of analysis" contained in Ninth Circuit precedent, which supports jurisdictional parity between national banks and state-chartered corporations, including state-chartered banks. *See Am. Sur. Co. v. Bank of California*, 133 F.2d 160, 162 (9th Cir. 1943).

The Supreme Court's decision in *Wachovia Bank* does not address whether a national bank could be a citizen of the state of its principal place of business. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 315 n.8 (2006). The controlling issue was never raised in that case because the defendant bank's principal place of business was located in the same state as its main office. *See id.* at 317 n.9. It is one thing to say that a

national bank is not a citizen of every state where it has any branch operations. *See id.* at 313.[1]  It is quite another to say what the majority says here: that a bank is only a citizen of the state designated as its main office. *See* Maj. Op. at 17.  In *Wachovia Bank*, the Supreme Court expressed concern that national banks would become "singularly disfavored corporate bodies with regard to their access to federal courts." *Id.* at 319.  The majority's rule goes too far in the opposite direction and places national banks on superior footing in their access to federal courts as compared to other corporations.  *See* 28 U.S.C. § 1332(c)(1).

Although the majority agrees with the statutory analysis from the Eighth Circuit's decision in *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 707–09 (8th Cir. 2011), I am not convinced that jurisdictional parity is as "ethereal" as the majority suggests. *See* Maj. Op. at 16.  Instead, I am persuaded by Judge Murphy's *WMR e-PIN* dissent that "*Wachovia* should be construed in favor of continuing to read § 1348 in light of the preexisting policy of jurisdictional parity between national banks on the one hand and state banks and corporations on the other." *WMR e-PIN*, 653 F.3d at 717 (Murphy, J., dissenting); *see Horton v. Bank One, N.A.*, 387 F.3d 426, 429–36 (5th Cir. 2004), *cert. denied*, 546 U.S. 1149 (2006); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 985–94 (7th Cir. 2001).  And while many district courts

---

[1] The Supreme Court reasoned: "Were we to hold . . . that a national bank is additionally a citizen of every State in which it has established a branch, the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities.  Congress, we are satisfied, created no such anomaly." *Wachovia Bank*, 546 U.S. at 307.  That reasoning has little force in this case where we decide if a national bank is a citizen of the state where it has its principal place of business.

have followed the Eighth Circuit's narrow approach to interpreting "located" under § 1348, many others have concluded that Wells Fargo is a citizen of California for diversity purposes by following the logic of the Fifth and Seventh Circuits. *See, e.g.*, *Ellis v. Wells Fargo Bank, N.A.*, __ F. Supp. 2d __, 2014 WL 585627, at *2–3 (S.D. Cal. Feb. 14, 2014) (concluding that the Fifth Circuit's reasoning in *Horton* was consistent with the Supreme Court's reasoning in *Wachovia Bank* and that Wells Fargo is "located" under § 1348 in California where it maintains its principal place of business); *Sako v. Wells Fargo Bank, N.A.*, __ F. Supp. 2d __, 2014 WL 584268, at *3–4 (S.D. Cal. Feb. 11, 2014) (same).

Finally, there is an important policy implication that should be considered because the word "located" in 18 U.S.C. § 1348 is ambiguous. To say that a bank like Wells Fargo, traditionally identified with California and with its principal place of business there for more than a century, is not a citizen of California for diversity purposes, would mean that any bank broadly identified with a state in which it started its business and maintained its principal place of business could ensure federal court diversity actions, and rule out the state courts, even when pitted against adverse citizens of the state where it is most closely identified and understood to operate. I do not think that idea, at odds with principles of federalism that give state courts a say in resolving their residents' disputes, is what Congress had in mind. I respectfully dissent.