15-3063
*OneWest Bank, N.A. v. Robert W. Melina*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: June 13, 2016     Decided: June 29, 2016)

Docket No. 15-3063

ONEWEST BANK, N.A.,
*Plaintiff-Counter-Defendant-Appellee,*

−v.−

ROBERT W. MELINA,
*Defendant-Counter-Claimant-Appellant,*

AMERICAN EXPRESS CENTURION BANK,
AMERICAN EXPRESS BANK, FSB,
CITIBANK, N.A., WILLIAM R. SANTO,
MAGALY BERMUDEZ, LOUIS BERMUDEZ, and
CARMEN MEDINA,
*Defendants.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

_____

Before:

NEWMAN, WESLEY, and DRONEY, *Circuit Judges*.

_____

Defendant-Appellant Robert W. Melina ("Melina") appeals from an August 31, 2015 memorandum and order of the United States District Court for the Eastern District of New York (Gleeson, *J.*) granting a motion for summary judgment by Plaintiff-Appellee OneWest Bank, N.A. ("OneWest"), which had filed a foreclosure action, and denying Melina's cross-motion to dismiss for lack of subject matter jurisdiction. Melina seeks review of the District Court's holdings that (1) a national bank is a citizen only of the state in which its main office is located; and (2) OneWest had standing to foreclose Melina's mortgage. We hold that a national bank is a citizen only of the state in which its main office is located—not also the state of its principal place of business—and that OneWest had standing to foreclose Melina's mortgage under both holder and assignment principles. We thus AFFIRM the judgment of the District Court.

MICHAEL BRUK, Law Office of Michael Bruk, New York, NY, *for Defendant-Appellant*.

ALLISON J. SCHOENTHAL, Hogan Lovells US LLP, Washington, D.C. (Nicole E. Schiavo, Hogan Lovells US LLP, New York, NY; Chava Brandriss, Sean Marotta, Hogan Lovells US LLP, Washington, D.C., *on the brief*), *for Plaintiff-Appellee*.

PER CURIAM:

Today we join our sister circuits in holding that, for purposes of subject matter jurisdiction, a national bank is a citizen only of the state in which its main office is located.

The facts underlying this case are straightforward. On February 26, 2007, Defendant-Appellant Robert W. Melina ("Melina") obtained and memorialized in a note (the "Note") a loan from Wall Street Mortgage Bankers Ltd. for $591,000 in principal. As security for this loan, Melina executed a mortgage on his property at 1245 77th Street in Brooklyn, New York. Wall Street Mortgage Bankers indorsed the Note to the order of IndyMac Bank, F.S.B. ("IndyMac"), and IndyMac later indorsed the Note in blank.

In July 2008, the Office of Thrift Supervision closed IndyMac and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver. That same day, the Office of Thrift Supervision created a new entity, IndyMac Federal Bank, F.S.B. ("IndyMac Federal"), transferred IndyMac's assets to IndyMac Federal, and appointed FDIC as IndyMac Federal's conservator. FDIC later also became IndyMac Federal's receiver.

On March 19, 2009, FDIC as IndyMac Federal's receiver entered into a Loan Sale Agreement ("LSA") to sell substantially all of IndyMac Federal's assets to Plaintiff-Appellee OneWest Bank, N.A. ("OneWest"). Section 2.05 of the LSA, titled "Closing," contemplates that transfer of the subject notes "shall" take place at some future time. *See* App. 76. Section 3.04(b) of the LSA requires that all notes subject to transfer pursuant to the LSA bear a specific form of endorsement.

Around the same time that OneWest acquired Melina's loan, OneWest contracted with Deutsche Bank National Trust Company for Deutsche Bank to serve as document custodian for Melina's original Note and mortgage. In that capacity, Deutsche Bank had physical possession of Melina's original Note and mortgage from 2009 until April 2011, at which point Deutsche Bank sent them to OneWest. OneWest returned Melina's Note and mortgage to Deutsche Bank in May 2011, and Deutsche Bank sent them back to OneWest in June 2014. OneWest then transmitted Melina's original Note and mortgage to its foreclosure counsel at Gross Polowy, LLC, on June 19, 2014.

On August 1, 2009, Melina defaulted on his loan by failing to make the payment due that day. He did not cure the default after receiving notice from OneWest.

On July 21, 2014, CIT Group Inc. entered into a definitive Agreement and Plan of Merger between CIT Group and IMB HoldCo LLC, the parent company of OneWest. CIT Group is a Delaware corporation with its principal place of business located at 11 West 42nd Street, New York, New York. Article V, Section 5.2 of the Agreement and Plan of Merger requires that, during the period between the date of the agreement and the actual closing, OneWest seek CIT Group's written permission prior to undertaking almost two dozen significant corporate decisions. These decisions include opening, closing, or relocating a branch.

On September 10, 2014, OneWest commenced a foreclosure action against Melina in the United States District Court for the Eastern District of New York, invoking the court's diversity jurisdiction. On that day, Melina's original Note and Mortgage were in the physical possession of OneWest's counsel at Gross Polowy. On October 13, 2014, OneWest filed an amended complaint containing substantively the same allegations as the original complaint. On February 3, 2015,

Melina filed an answer, and on April 2, 2015, he filed an amended answer. OneWest thereafter moved for summary judgment, and Melina cross-moved to dismiss for lack of subject matter jurisdiction.

On June 18, 2015, the District Court heard oral arguments on the motions. In a memorandum and order dated August 31, 2015, the District Court denied Melina's cross-motion to dismiss and granted OneWest's motion for summary judgment. The District Court held that a national bank such as OneWest is a citizen only of the state in which its main office is located—not also of the state of its principal place of business—and that OneWest's main office is indisputably in California. The District Court concluded further that, even if the principal place of business of a national bank mattered for jurisdictional purposes, OneWest's was California.

The District Court also disagreed with Melina's standing arguments on the basis of its finding that OneWest was the legal "holder" of Melina's Note and entitled to enforce it under the New York Uniform Commercial Code. This finding was based on the affidavits of OneWest's corporate representative and counsel, which established that OneWest was in physical possession of Melina's original Note at the time it commenced its lawsuit. Additionally, the District Court found that OneWest had proven it was entitled to enforce Melina's loan as the loan's assignee.

Melina timely appealed the District Court's memorandum and order and sought review of the District Court's holdings on subject matter jurisdiction and standing.

## DISCUSSION[1]

Diversity jurisdiction under 28 U.S.C. § 1332 is proper "only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). Diversity is measured as of the time the action is brought, and thus a post-filing change of citizenship does not destroy diversity jurisdiction. *See Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999).

A corporation's principal place of business under § 1332 is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). In practice, this "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *Id.* at 93.

28 U.S.C. § 1348 provides that national banks shall "be deemed citizens of the States in which they are respectively located." The Supreme Court has held unequivocally that a national bank is "located," for diversity jurisdiction purposes, in

---

[1] We review *de novo* a district court's legal determinations, including those regarding subject matter jurisdiction. *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996); *see also Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 725–26 (2d Cir. 2000) (reviewing *de novo* the district court's legal determination regarding diversity jurisdiction).

We also review *de novo* a district court's decision to grant summary judgment. *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008). A grant of summary judgment should be affirmed "'only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

the state designated in its articles of association as the locus of its main office—not in every state in which it has branch offices. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).[2]

In *Wachovia Bank*, the Supreme Court left open the question of whether a national bank is also a citizen of the state of its principal place of business. *See id.* at 315 n.8. The Court did observe, however, that although 28 U.S.C. § 1332 provides that a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business," 28 U.S.C. § 1332(c)(1), "[t]he counterpart provision for national banking associations, § 1348, . . . does not refer to 'principal place of business,'" *Wachovia Bank*, 546 U.S. at 317 n.9. The Court then dismissed this difference as one "of scant practical significance" because "in almost every case . . . the location of a national bank's main office and of its principal place of business coincide." *Id.*

Several federal courts of appeals to have considered this issue in the wake of *Wachovia Bank* have held that a national bank is a citizen only of the state listed in its articles of association as its main office. *See, e.g., Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 708 (9th Cir. 2014) ("Looking to the Supreme Court's treatment of the issue and to the history and sequence of the enactment and amendment of the statute, we conclude that, under § 1348, a national bank is 'located' only in the state designated as its main office."); *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 706–10 (8th Cir. 2011) (analyzing

---

[2] National banks are "corporate entities chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury" and thus they do not fit within § 1332(c)'s definition of State-incorporated entities. *Wachovia Bank*, 543 U.S. at 306.

*Wachovia Bank* and § 1348's statutory history to "reject [the] claim that Wells Fargo is a citizen of both South Dakota and California").[3] Even the Fifth and Seventh Circuits, which had held prior to *Wachovia Bank* that a national bank's principal place of business is an independent basis for its citizenship, have now agreed that a national bank's citizenship is to be determined with reference to its main office. *See, e.g., Tu Nguyen v. Bank of Am., N.A.*, 516 F. App'x 332, 334 n.1 (5th Cir. 2013) ("A national bank may be considered a citizen of 'the State designated in its articles of association as its main office.'" (quoting *Wachovia Bank*, 546 U.S. at 318)); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("*Wachovia Bank* held that national banks are citizens only of the states in which their main offices are located, and that decision saves this case from a jurisdictional dismissal.").

We agree with our sister circuits that a national bank is a citizen only of the state listed in its articles of association as its main office. Though *Wachovia Bank* did not conclusively resolve

[3] Additional circuits have, in the wake of *Wachovia Bank*, held that a national bank is a citizen of the state in which its main office is located. *See, e.g., Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 673 (11th Cir. 2014) ("For purposes of section 1348, a national bank is located in the place where it is designated to have its main office."); *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 212 (1st Cir. 2012) ("Well[s] Fargo, a national bank, is a citizen of . . . the State designated in its articles of association as its main office . . . ." (internal quotation marks omitted)); *Hargrow v. Wells Fargo Bank N.A.*, 491 F. App'x 534, 536 (6th Cir. 2012) (citing *Wachovia Bank* for its holding that "national banks are citizens of states where designated main office is located for purposes of citizenship under 28 U.S.C. § 1348"). It is not entirely clear from these decisions, however, whether these circuits consider a national bank to be *exclusively* a citizen of the state in which its main office is located.

whether a national bank is a citizen of the state in which it has its principal place of business, the Supreme Court in that case did provide some indication that, for diversity purposes, a national bank's citizenship should be limited to the location of its main office. *See* 546 U.S. at 307 ("Were we to hold . . . that a national bank is additionally a citizen of every State in which it has established a branch, the access of a [national] bank to a federal forum would be drastically curtailed . . . ."). This is consistent with both the statutory history of § 1348 and canons of construction.

Congress first addressed jurisdiction for national banks in 1882, when it enacted the statutory predecessor to the current § 1348. This 1882 statute ensured jurisdictional parity between national banks and state-chartered banks by "provid[ing], in clear and unmistakable terms, that the courts of the United States should not have jurisdiction . . . unless they would have jurisdiction under like circumstances of suits by or against a state bank doing business in the same state with the national bank." *Leather Mfrs.' Nat'l Bank v. Cooper*, 120 U.S. 778, 781 (1887) (emphasis omitted). The 1882 statute remained in effect until 1887, at which point the language tying national bank jurisdiction to state bank jurisdiction was removed. Rather than focusing on parity with state banks, the 1887 statute evoked jurisdictional parity between national banks and individual citizens. *See* Act of Mar. 3, 1887, ch. 373, § 4, 24 Stat. 552, 554–55.

In 1911, Congress once again entertained the issue and provided, in relevant part, that "all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them . . . be deemed citizens of the States in which they are respectively located." Act of Mar. 3, 1911, ch. 231, § 16, 36 Stat. 1087, 1093. It was not until 1948 that Congress arrived at the current version of this statute,

9

codified at 28 U.S.C. § 1348, which provides in relevant part that "[a]ll national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." Act of June 25, 1948, ch. 646, § 1348, 62 Stat. 869, 934.

Though Congress did not tinker further with the citizenship of national banks after 1948, it did dramatically shift the understanding of diversity jurisdiction with respect to the citizenship of state-chartered corporations in 1958. That year, Congress enacted a provision stating that a state-chartered corporation—which includes state-chartered banks—is a citizen of both the state of incorporation and the state of its "principal place of business." Act of July 25, 1958, Pub. L. No. 85-554, sec. 2, § 1332, 72 Stat. 415. That provision is now codified at 28 U.S.C. § 1332(c)(1).

The meaning of a statute's terms is to be determined as of the time that it became law. *See MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 228 (1994). At the time that Congress employed the word "located" in § 1348, the statutory concept of "principal place of business" had not yet come into existence. Canons of statutory construction thus counsel against interpreting "located" in § 1348 as providing a basis for subject matter jurisdiction based on a national bank's principal place of business. *See WMR e-PIN*, 653 F.3d at 709 ("We will not import a jurisdictional concept into § 1348 that was unknown at the time of its adoption.").

As observed by our sister circuits, "[n]othing in the current version of the statute or in its history suggests that Congress intended to revive the principle of jurisdictional parity between state-chartered banks and national banks" once it affirmatively deleted that parity from earlier versions of the statute. *Rouse*, 747 F.3d at 715. We agree that

10

when Congress introduced principal-place-of-business citizenship for state banks and corporations in § 1332(c)(1), it made no reference to jurisdictional parity, nor to national banks or § 1348. And nothing in § 1348 indicates that it would incorporate by reference any subsequent change in the statutes governing jurisdiction over state banks and corporations.

*WMR e-PIN*, 653 F.3d at 708.

If Congress wishes to amend § 1348, then of course it is free to do so. That task, however, is not for us. *See Rouse*, 747 F.3d at 715. We again share our sister circuits' view that "should Congress wish to link the jurisdiction for national and state banks, the statute can easily be amended," *id.*, and that "[w]hether [jurisdictional parity between national and state banks] ought to be revived is a policy question for Congress, not the federal courts," *WMR e-PIN*, 653 F.3d at 709.

Melina argued before the District Court that OneWest's principal place of business is in New York, and thus that there could be no diversity jurisdiction between the parties. He argued further that CIT Group's proposed acquisition of OneWest's parent company warranted use of CIT Group's principal place of business instead of OneWest's for purposes of diversity jurisdiction. The District Court rejected these arguments, concluding instead that (1) OneWest had successfully shown "that its main office and principal place of business is in California based on an affidavit submitted by Jon Dickerson, the First Vice President of its foreclosure department, and an application to the Federal Reserve System," App. 167, and (2) "the citizenship of any actual or proposed parent of OneWest does not control OneWest's citizenship for purposes of diversity jurisdiction," App. 168.

11

On appeal, Melina argues that "a national association is a citizen of the state of its principal place of business" as evidenced by "[c]ongressional intent to maintain parity between national and state banks, Supreme Court dictum, this Court's reluctance to limit said citizenship to only the state designated as the main office, and federal government agency interpretation of 28 U.S.C. § 1348." Appellant's Br. 9. As support for his argument, Melina relies primarily on two of this Court's previous decisions—*World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 161 (2d Cir. 2003) and *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124–25 (2d Cir. 2003)—as well as a 2002 interpretive letter from the Office of the Comptroller of the Currency.

We do not find Melina's arguments persuasive. The cases that Melina cites, which he concedes do not "directly settle[] the issue of whether a national association['s] principal place of business is relevant for diversity purposes," Appellant's Br. 12, undermine rather than support his points. *World Trade Center Properties* was directly abrogated by *Wachovia Bank*. *See Wachovia Bank*, 546 U.S. at 309 (recognizing *World Trade Center Properties* as representing one side of a circuit split and holding in favor of the other side of that split). *Lerner*, too, was decided before *Wachovia Bank*, and it does not even so much as mention § 1348.

The interpretive letter from the Office of the Comptroller of the Currency does not fare much better. Though Melina is correct that the letter allows for a national bank's citizenship to be determined by its principal place of business, the letter explicitly relies on and parrots the reasoning of *Firstar Bank, N.A. v. Faul*, 253 F.3d 982 (7th Cir. 2001), a case that did not survive the Seventh Circuit's interpretation of *Wachovia Bank*. *See Hicklin Eng'g*, 439 F.3d at 348 (holding, in accord with *Wachovia Bank*, that "national banks are citizens only of the states in which their main offices are located"); *see also WMR e-PIN*, 653 F.3d at 708

12

("The Seventh Circuit has gone further, reading *Wachovia Bank* to reject the proposition embraced in its *Firstar Bank* decision that a national bank's principal place of business is an independent basis for citizenship."). Moreover, the Office of the Comptroller of the Currency repudiated its own letter at oral argument in *Wachovia Bank*, stating clearly that "we don't think that a national banking association is a citizen of a State in which its principal place of business is found, insofar as that might be different from the State in which its main office is located." *WMR e-PIN*, 653 F.3d at 710 (quoting Oral Arg. Tr. at 18:22, *Wachovia Bank*, 546 U.S. 303).

Furthermore, the District Court correctly held that OneWest's principal place of business is, like its main office, in California. Melina does not directly dispute this fact. Instead, he argues that OneWest's principal place of business was New York because OneWest's parent company, IMB HoldCo, was being purchased by CIT Group—a company headquartered in New York—at the time that OneWest filed its complaint. Melina claims that when OneWest filed its original complaint on September 10, 2014, the Agreement and Plan of Merger between CIT Group and IMB HoldCo, dated July 21, 2014, had already "transferred responsibility for major corporate decisions to New York State, which in turn means New York is the place where One[W]est's officers direct, control, and coordinate corporate activities." Appellant's Br. 17.

OneWest responds that "CIT Group's future acquisition of OneWest's parent company could not affect OneWest's principal place of business because . . . '[w]hen formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent.'" Appellee's Br. 13 (quoting *Schwartz v. Elec. Data*

13

*Sys., Inc.*, 913 F.2d 279, 283 (6th Cir. 1990)). OneWest is correct. It is well established in other circuits[4] that "a subsidiary corporation has its own principal place of business for purposes of diversity of citizenship jurisdiction, unless it is merely an 'alter ego' or agent of the parent corporation," Charles Alan Wright, et al., 13F *Federal Practice and Procedure* § 3625 (3d ed.), and we agree. Melina does not argue that OneWest was an alter ego or agent of its parent company, and thus his argument that OneWest assumed its parent company's principal place of business holds no water.

Melina also contends that the express terms of the Agreement and Plan of Merger "effectively transferred One[W]est[']s principal place of business to New York, New York." Appellant's Br. 18. In making this argument, Melina relies heavily on § 5.2's restriction on OneWest's freedom to open, close, or relocate any branch office. He argues that this restriction means that OneWest, IMB HoldCo as its parent, and CIT Group as its proposed parent all "have the same principal place of business [*i.e.*, New York]." Appellant's Br. 18.

This argument, too, must fail; a corporate subsidiary does not assume the principal place of business of its future corporate parent solely as a result of its subsidiary status. The merger agreement between IMB HoldCo and CIT Group says nothing about OneWest's principal place of business. Though § 5.2 requires OneWest to obtain approval before undertaking certain transactions, this provision does not morph OneWest into an alter ego or agent of its parent, IMB HoldCo—and thus it does

---

[4] *See, e.g., Shell Rocky Mountain Prod., LLC v. Ultra Res., Inc.*, 415 F.3d 1158, 1163 (10th Cir. 2005); *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775 (9th Cir. 2005); *Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 283 (6th Cir. 1990).

14

not mean that OneWest assumes IMB HoldCo's principal place of business.

Finally, Melina argues that the District Court's grant of summary judgment "should be reversed because there is a genuine issue of material fact as to plaintiff[']s standing to commence a foreclosure action." Appellant's Br. 19. The "genuine issue of material fact," in Melina's view, is whether OneWest was the holder or assignee of the mortgage or underlying Note at the time the action was commenced.

Under New York law, "[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 981 (N.Y. 2d Dep't 2015). "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754 (N.Y. 2d Dep't 2009); *accord Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015).

Melina does not contest OneWest's possession of the Note at the time it filed its complaint. Instead, Melina argues that OneWest's failure "to provide the exact date the Note was transferred, or any details at all regarding the delivery of the Note prior to commencement of a foreclosure action" is fatal to its claim for summary judgment. Appellant's Br. 24. This argument, however, has already been rejected by the New York State Court of Appeals. In *Aurora Loan Services, LLC v. Taylor*, 25 N.Y.3d 355 (2015), the New York State Court of Appeals noted that "[a]lthough the better practice would have been for [the plaintiff] to state how it came into possession of the note in its affidavit in order to clarify the situation completely," the

plaintiff was not precluded from obtaining summary judgment by not having provided these details. *Aurora Loan Servs.*, 25 N.Y.3d at 362. Following *Aurora*, New York courts have repeatedly held that proof of physical possession—such as the affidavits of OneWest's corporate representative and counsel in this case—is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note. *See, e.g., Wells Fargo Bank, N.A. v. Charlaff*, 134 A.D.3d 1099, 1100 (N.Y. 2d Dep't 2015); *Rooney*, 132 A.D.3d at 982; *HSBC Bank USA, N.A. v. Spitzer*, 131 A.D.3d 1206, 1207 (N.Y. 2d Dep't 2015); *Deutsche Bank Nat'l Tr. Co. v. Abdan*, 131 A.D.3d 1001, 1002 (N.Y. 2d Dep't 2015). OneWest thus had no obligation to provide details pertaining to the transfer or delivery of Melina's Note in order to prove its standing to foreclose on the associated mortgage.

Moreover, OneWest was the assignee of Melina's loan. In New York, standing to foreclose may be established by "a written assignment of the underlying note." *OneWest, F.S.B. v. Goddard*, 131 A.D.3d 1028, 1029 (N.Y. 2d Dep't 2015). "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Suraleb, Inc. v. Int'l Trade Club, Inc.*, 13 A.D.3d 612, 612 (N.Y. 2d Dep't 2004) (internal quotation marks omitted). Here, the LSA provided that FDIC, as receiver and conservator for IndyMac Federal, would "sell[], transfer[], convey[], assign[] and deliver[]" to OneWest, and OneWest would "purchase[], accept[] and assume[] from [FDIC] . . . all of [FDIC's] rights, title and interests in, to and under" certain defined assets. App. 73 (§ 2.01(a)). The LSA thus assigned to OneWest all of the rights that FDIC previously had to Melina's loan as the conservator and receiver of IndyMac Federal—and this assignment sufficed to give OneWest standing to foreclose.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.