*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-AA-0575

BOOZ ALLEN HAMILTON INC., PETITIONER,

v.

DISTRICT OF COLUMBIA
OFFICE OF TAX AND REVENUE, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Office of Administrative Hearings
(2017-OTR-00008 & 2017-OTR-00018)

(Argued September 26, 2023                    Decided February 8, 2024)

*Catherine M.A. Carroll*, with whom *Ronald C. Machen*, *Hillary S. Smith*, *Elena M. Satten-Lopez*, and *Philip M. Tatarowicz* were on the brief, for petitioner Booz Allen Hamilton Inc.

*Jeremy R. Girton*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time the brief was filed, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General, were on the brief, for respondent.

Before BECKWITH and MCLEESE, *Associate Judges*, and FISHER, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioner Booz Allen Hamilton Inc. ("BAH")

challenges a determination that BAH was ineligible for certain tax benefits. We

affirm.

## I. Facts and Procedural Background

Except as noted, the following facts appear to be undisputed for present purposes. The dispute at issue in this case involves taxes paid in 2013 through 2015. Some of the statutes at issue have since been repealed or amended. *See*, *e.g.*, FY2021 Budget Support Act of 2020, D.C. Law 23-149, § 7152, 67 D.C. Reg. 10493, 10618-19, 14601 (2020). Subsequent statutory references in this opinion therefore are to the D.C. Code as in effect at the pertinent time. Qualified high-technology companies ("QHTCs") were granted various tax benefits, including a temporary exemption from the District of Columbia's corporate franchise tax. *See, e.g.*, D.C. Code §§ 47-1817.01(5), 47-1817.06(a). The franchise tax is normally levied for "engaging in any trade or business within the District and . . . receiving income from sources within the District." *Id.* § 47-1807.02(a). The franchise tax is based on a company's net income derived from all sources within the District. *See id.* §§ 47-1807.01(2), 47-1807.02(a). The franchise-tax exemption was one of the primary incentives offered to QHTCs—high-tech businesses that the District sought to attract and retain—during the years at issue.

The Ballpark Omnibus Financing and Revenue Act of 2004 ("Ballpark Act"), D.C. Law 15-320, 52 D.C. Reg. 1575 (2005), amended the QHTC definition as part of creating a financing mechanism for what would become Nationals Park. The law designated an area around the site of the new stadium as the "DC Ballpark TIF [Tax

Increment Financing] Area," and added a provision excluding any "business entity located in the DC Ballpark TIF Area" ("ballpark area") from qualifying as a QHTC. D.C. Code §§ 2-1217.12(a), 47-1817.01(5)(B)(iii). Increased sales and real-property taxes generated "from locations within the [ballpark] area" were allocated to a Community Benefit Fund ("CBF"). *Id.* § 2-1217.12(a)-(c). The CBF could use the "economic benefits . . . derived from the construction of the ballpark" to support projects tied to the ballpark area but also other projects throughout the District. *Id.* § 10-1602.01; *see also id.* §§ 2-1217.12(c), 10-1602.03(a)(5), 10-1602.04. Franchise taxes collected from business entities in the ballpark area were not included in the CBF. *See id.* § 2-1217.12(a)-(c).

BAH is a Virginia-based private corporation, incorporated in Delaware, that provides management, technology, consulting, and engineering services to clients in the public and private sectors. BAH has several offices in the District. The office that BAH claims is BAH's main office in the District is located outside the ballpark area. During the relevant period, however, BAH leased an office at 20 M Street SE, which is in the ballpark area. Although the parties disagree about the exact number, approximately 186 BAH employees reported to this office during the relevant period. The parties also do not agree about the amount of BAH's revenue from QHTC activities that is allocable to the M Street location. Estimates ranged from 6.9 percent to approximately 40 percent of BAH's total District gross revenues for

the years at issue.

BAH filed refund requests claiming QHTC franchise-tax benefits for 2013, 2014, and 2015. The Office of Tax and Revenue ("OTR") denied those refund requests on the ground that BAH was not a QHTC because of the ballpark-area exclusion. BAH sought review before the Office of Administrative Hearings ("OAH"), which upheld OTR's denial of the refund requests.

## II. Standard of Review and Background Legal Principles

This court will uphold a ruling by OAH unless the ruling is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C. Code § 2-510(a)(3)(A). BAH does not challenge any of OAH's factual determinations. Rather, BAH primarily challenges OAH's interpretation of the applicable statutory provisions. "The proper construction of a statute raises a question of law." *Washington v. D.C. Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008). This court generally reviews legal conclusions de novo. *Providence Hosp. v. D.C. Dep't of Emp. Servs.*, 855 A.2d 1108, 1111 (D.C. 2004).

When interpreting statutes, "[w]e first look to see whether the statutory language at issue is plain and admits of no more than one meaning." *In re Macklin*, 286 A.3d 547, 553 (D.C. 2022) (internal quotation marks omitted). "The meaning— or ambiguity—of certain words or phrases may only become evident when placed in context. Therefore, we do not read statutory words in isolation; the language of

surrounding and related paragraphs may be instrumental to understanding them." *Id.* (internal quotation marks omitted). "We consider not only the bare meaning of the word but also its placement and purpose in the statutory scheme. Statutory interpretation is a holistic endeavor." *Id.* (internal quotation marks omitted).

Generally, "[w]e will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result." *In re Macklin*, 286 A.3d at 553 (internal quotation marks omitted). The plain meaning of a statute may not be controlling, however, when there is a "clearly expressed legislative intention to the contrary." *Hensley v. D.C. Dep't of Emp. Servs.*, 283 A.3d 123, 127 (D.C. 2022) (internal quotation marks omitted).

"We consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *In re Macklin*, 286 A.3d at 553 (brackets and internal quotation marks omitted). "We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent." *Id.* (internal quotation marks omitted).

"[W]e accord appropriate weight to the interpretation of a statute by the agency which is charged with its enforcement, and which therefore ordinarily has specialized expertise." *Washington*, 954 A.2d at 948. We agree with the parties that OAH's legal determinations should not be accorded deference. *Vizion One, Inc. v. D.C. Dep't of Health Care Fin.*, 170 A.3d 781, 791 (D.C. 2017) ("OAH is vested

with the responsibility for deciding administrative appeals involving a substantial number of different agencies and thus lacks the subject-matter expertise justifying the deference to agency interpretations of statutes or regulations") (ellipsis and internal quotation marks omitted).

"This court does generally owe a level of deference to OTR's interpretation of its governing statute." *D.C. Off. of Tax & Revenue v. BAE Sys. Enter. Sys., Inc.*, 56 A.3d 477, 480 (D.C. 2012) (internal quotation marks omitted). The parties dispute the extent to which OTR is entitled to such deference in the circumstances of this case. We need not resolve that dispute, because we rule in favor of OTR without according any deference to OTR's legal conclusions.

### III. Ballpark-Area Exclusion and Franchise Taxes

BAH argues that the ballpark-area exclusion does not apply to the franchise-tax benefits granted to QHTCs. We disagree.

BAH's claim of entitlement to franchise-tax benefits rests entirely on BAH's status as a QHTC. D.C. Code § 47-1817.06. As previously noted, the ballpark-area exclusion provides that a "business entity located in the DC Ballpark TIF Area" is not a QHTC. *Id.* § 47-1817.01(5)(B)(iii). It follows that such business entities are not entitled to the franchise-tax benefits given to QHTCs. In our view, this "statutory language . . . is plain and admits of no more than one meaning." *In re Macklin*, 286 A.3d at 553 (internal quotation marks omitted). "Normally, the plain language and

ordinary meaning of a statute control." *Bruce v. United States*, 305 A.3d 381, 396 (D.C. 2023); *see also, e.g.*, *Zalmerón v. United States*, 125 A.3d 341, 347 (D.C. 2015) ("[T]he burden on a litigant who seeks to disregard the plain meaning of the statute is a heavy one . . . .") (internal quotation marks omitted).  We therefore hold that BAH is not entitled to franchise-tax benefits if it was "a business entity located in" the ballpark area.

We are not persuaded by BAH's arguments to the contrary.  First, BAH notes that the Ballpark Act does not specifically refer to franchise-tax benefits.  That is true, but we see no reason to expect such a specific reference.  By explicitly excluding business entities located in the ballpark area from the definition of a QHTC, the D.C. Council unambiguously excluded such entities from all of the tax benefits that QHTCs receive, including franchise-tax benefits.

Second, BAH argues that eliminating franchise-tax benefits for QHTCs located in the ballpark area would have been an important decision, but there is no indication in the legislative history that the D.C. Council intended to make that decision.  Of course, "[t]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that [the lawmaker] has used." *Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C. 1980) (en banc) (internal quotation marks omitted).  In other words, the unambiguous text of the ballpark-area exclusion is strong evidence that the Council intended to do

precisely what that language says.

Moreover, BAH acknowledges that the D.C. Council added the ballpark-area exclusion at a hearing at the very end of the legislative process. D.C. Bill 15-1028, § 110(c) (Dec. 21, 2004). We apparently have no specific information—beyond the text of the provision itself—as to why the Council enacted the ballpark-area exclusion. In those circumstances, we see no basis for drawing any inference from the Council's failure to specifically discuss the scope of the unexplained exclusion. *See, e.g.*, *Lucas v. United States*, 240 A.3d 328, 339 (D.C. 2020) (where legislative history was silent as to reason for specific amendment, legislative history "provid[ed] little insight as to the Council's intent"). In any event, "it is not the law that a statute can have no effects which are not explicitly mentioned in its legislative history. . . . Silence in the legislative history, no matter how clanging, cannot defeat the better reading of the text and statutory context." *Facebook, Inc. v. Wint*, 199 A.3d 625, 631 (D.C. 2019) (brackets and internal quotation marks omitted); *see Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 755 (D.C. 1983) (en banc) ("Where legislative materials are without probative value, or contradictory, or ambiguous, they should not be permitted to control the customary meaning of words.") (brackets and internal quotation marks omitted).

Third, BAH suggests in passing that the D.C. Council was not permitted to materially amend the Ballpark Act at the final hearing on the proposed act. *See* D.C.

Code § 1-204.12(a) ("Each proposed act shall be read twice in substantially the same form, with at least 13 days intervening between each reading."). BAH does not actually argue, however, that the ballpark-area exclusion is invalid on that basis. We therefore have no occasion to address that issue. *See, e.g.*, *Hawk v. D.C. Dep't of Emp. Servs.*, 244 A.3d 1018, 1022 (D.C. 2021) (declining to consider issues not raised by parties on review).

BAH does make a related argument. According to BAH, this court should interpret the ballpark-area exclusion narrowly, as inapplicable to franchise-tax benefits, in order to avoid the concern that the D.C. Council may have acted impermissibly by adopting the exclusion without a required second reading. It is not clear, however, that BAH's proposed interpretation would solve this procedural concern. Unless the ballpark-area exclusion would be "immaterial" under BAH's proposed interpretation, the procedural problem would remain. BAH has not argued, however, that the ballpark-area exclusion would be a permissible immaterial amendment if the exclusion were interpreted more narrowly to leave franchise-tax benefits unaffected. Under the circumstances, we do not view this procedural concern as providing support for BAH's proposed interpretation. *Cf. J.P. v. District of Columbia*, 189 A.3d 212, 222 (D.C. 2018) (doctrine of constitutional avoidance did not apply, because claimed constitutional concern would persist even under proposed narrowing interpretation). More fundamentally, the principle that statutes

should be construed narrowly to avoid concerns about their validity does not permit courts to override plain statutory language. *See, e.g.*, *Facebook*, 199 A.3d at 633 ("Because we find the [statute] to be unambiguous on the point at issue in this case, we see no basis for applying the doctrine of avoidance."). For the reasons we have explained, we conclude that the ballpark-area exclusion unambiguously applies to franchise-tax benefits.

Fourth, BAH argues that it would be absurd to interpret the ballpark-area exclusion to apply to franchise-tax benefits. More specifically, BAH argues that (1) franchise-tax receipts are not placed in the CBF or any other fund created by the Ballpark Act, so it would make no sense to require QHTCs located in the ballpark area to pay higher franchise taxes; and (2) increasing franchise taxes on QHTCs located in the ballpark area would be counterproductive, because doing so would deter QHTCs from remaining in or bringing development to the ballpark area. We agree that it is not obvious why the D.C. Council would increase the franchise taxes on QHTCs located in the ballpark area but not devote those increased taxes to any of the several funds created by the Ballpark Act. It is also true that courts will look beyond plain language "in extraordinary cases in which the plain language would lead to absurd results." *Dove v. Dairyland Ins. Co.*, 562 A.2d 1199, 1200 n.6 (D.C. 1989). We have cautioned, however, that "words are important, and the burden on a litigant who asks the court to disregard their plain import is not a light one." *James*

*Parreco & Son v. D.C. Rental Hous. Comm'n*, 567 A.2d 43, 46 (D.C. 1989).

The absence of any legislative history explaining the enactment of the exclusion means that we do not know why the D.C. Council actually chose to legislate as it did. We conclude, however, that BAH has not carried the heavy burden of establishing that applying the ballpark-area exclusion as written would be absurd. For example, the Council might simply have decided to preclude companies from getting not only the tax benefits of QHTC status but also the indirect benefits of being located in the ballpark area, which was expected to undergo vibrant growth. Moreover, the Council might have decided to do that without taking the broader step of including in the CBF all of the franchise taxes paid by all business entities located in the ballpark area. Finally, the fact that the franchise taxes of business entities located in the ballpark do not go into the CBF is less consequential than it might seem, given that the CBF can be used to support projects throughout the District. D.C. Code § 10-1602.01; *see also id.* §§ 2-1217.12(c), 10-1602.03(a)(5), 10-1602.04.

Whether the ballpark-area exclusion as written reflects good tax policy or not is beyond our expertise and function. *See, e.g.*, *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52 (2008) ("[I]t is not for us to substitute our view of policy for the legislation which has been passed by Congress.") (ellipsis and internal quotation marks omitted). We hold that the ballpark-area exclusion applies to

remove QHTC franchise-tax benefits from business entities located in the ballpark area.

## IV. Location in the Ballpark Area

The principal remaining question is whether BAH is "a business entity located in the" ballpark area. D.C. Code § 47-1817.01(5)(B)(iii). OTR argues that BAH is located in the ballpark area because BAH leases an office in the ballpark area where numerous BAH employees work. BAH argues that merely having such an office in the ballpark area does not mean that BAH "as a whole" is located in the ballpark area. We conclude that OTR has the better of the argument.

## A. Ordinary Meaning

We turn first to the definitions of "locate" and "located" in ordinary usage and ordinary legal usage. The seemingly most relevant general definition of "locate" is to "establish oneself or one's business in a specified place." *New Oxford American Dictionary* 1025 (3d ed. 2010). A leading legal dictionary defines "located" as "[h]aving a physical presence or existence in a place." *Located*, *Black's Law Dictionary* 940 (6th ed. 1990). These definitions do not in our view unambiguously resolve the question before us, but they do provide some support for OTR's argument that BAH is located where BAH has a "physical presence," such as an office where some of its employees work.

Both ordinary and legal usage provide some further support for OTR's argument. It is undisputed that BAH itself has repeatedly referred to its office in the ballpark area as one of its "locations." The Supreme Court, moreover, has held that, for purposes of a particular venue provision, a national bank is "located" in each county in which the bank has a branch conducting banking business. *Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35, 36-45 (1977). OTR's reading of the statute thus rests on a common and natural reading of the word "located." *Cf. generally, e.g.*, *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 669 (1990) (explaining that statutory language at issue "somewhat more naturally reads as the Court of Appeals determined").

We do not wish to overstate the significance of the ordinary meaning of "located." The Supreme Court has explained that, considered in isolation, "located" is "a chameleon word; its meaning depends on the context in and purpose for which it is used." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *see also BAE Sys.*, 56 A.3d at 484 ("[T]he word 'locate' is far from clear."). In *Wachovia*, for example, the Supreme Court distinguished *Bougas* and held that, for purposes of federal diversity jurisdiction, a national bank is located "in the State designated in its articles of association as its main office." 546 U.S. at 318; *see also id.* at 307.

Thus, although we believe that OTR's interpretation gives "located" a natural and common meaning, we do not view that meaning as unambiguously foreclosing

any other reading of the term. BAH's alternative interpretation of "located" is not entirely clear to us, however. At times, BAH appears to argue that each "business entity" has only one location, which BAH suggests should be the business entity's principal place of business. BAH cites no case or other authority interpreting "located" so narrowly.

At other points, BAH appears to acknowledge that a business entity can have at least two locations: the entity's place of incorporation and the entity's principal place of business. There is some support for that as a possible interpretation of the term "located" in the context of business entities. *See Horton v. Bank One, N.A.*, 387 F.3d 426, 436 (5th Cir. 2004) (holding, for purposes of federal diversity jurisdiction, that "the definition of 'located' is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of association"); *but see, e.g.*, *Wells Fargo Bank, N.A. v. WMR e-Pin, LLC*, 653 F.3d 702, 706-10 (8th Cir. 2011) (holding, for purposes of federal diversity jurisdiction, that national bank is not "located" in its principal place of business if that differs from the bank's main office as designated by bank's articles of association). That view, however, would have some surprising consequences in the current context. For example, a company that was incorporated in Virginia and also had its principal place of business in Virginia would apparently not be "located" in the ballpark area even if its sole D.C. office was located in the ballpark area, and

even if that sole D.C. office was quite large.

Perhaps to avoid that conclusion, BAH at yet other points appears to suggest that a business entity would be located in the ballpark area, even if the business's place of incorporation and principal place of business were located elsewhere, as long as an office in the ballpark area was the business entity's principal place of business in the District of Columbia. This alternative, however, seems to contradict BAH's central contention that the issue is the location of BAH "as a whole." Moreover, this alternative lacks any obvious textual basis. Nothing in the language of D.C. Code § 47-1817.01(5)(B)(iii), or in any natural reading of "located," supports a theory that whether a business entity is located in the ballpark area would turn not only on the business entity's activities in the ballpark area, but also on whether the business entity's other activities happen to be located elsewhere in the District of Columbia or instead outside the District of Columbia. Finally, this alternative too would have surprising implications. Under this approach, if BAH's operations in the ballpark area remained unchanged but BAH moved its other District of Columbia operations to Virginia, then BAH would apparently thereby become located in the ballpark area.

In sum, OTR's position is consistent with a natural and common meaning of "located." In contrast, BAH's inability to settle on a clear and consistent alternative interpretation of "located" in our view weighs significantly against BAH's position.

**B. Statutory Structure and Context**

We do not discern much additional guidance from the overall structure and context of D.C. Code § 47-1817.01(5)(B)(iii). BAH seeks support, however, from the definition of a QHTC in D.C. Code § 47-1817.01(5)(A)(i), which at the pertinent time stated that a QHTC was an "individual or entity" that "*maintains an office*, headquarters, or base of operations in the District of Columbia" (emphasis added). (Section 47-1817.01(5)(A)(i) has since been amended to define a QHTC as "[a]n individual or entity" that "leas[es] or own[s] an office in the District of Columbia.")

BAH points out that the ballpark exclusion uses different language, referring to any "*business entity* located in" the ballpark area. D.C. Code § 47-1817.01(5)(B)(iii) (emphasis added). BAH concludes that the D.C. Council's use of different terms in those two provisions shows that "located in" is not synonymous with "maintains an office." We can assume that BAH's argument is correct up to this point, but it does not follow that "located in" must exclude "maintain[ing] an office." Rather, "maintain[ing] an office" could be one of a number of different ways of being located in a place. This court suggested as much in *BAE Systems*. 56 A.3d at 484 (noting that in some circumstances business arguably could be considered "located" in a place even though the business had no property interest in the place).

Relatedly, BAH points out that if the D.C. Council had wanted to provide that maintaining an office in the ballpark area meant that a business entity was located in the ballpark area for purposes of the ballpark-area exclusion, the Council could have just said that explicitly. That is true. It is equally true, though, that if the Council had wanted to say that a business entity was located in the ballpark area for purposes of the ballpark-area exclusion only if an office in the ballpark area was the business entity's principal place of business (or principal place of business in the District of Columbia), the Council could have just said that explicitly. That the Council could have been clearer either way in our view sheds no light on how best to interpret the language the Council actually enacted.

## C. Legislative Intent

BAH discusses the legislative history of the Ballpark Act in considerable detail. As we have already noted, *see supra* at pp. 7-8, that legislative history is silent on the D.C. Council's thinking in enacting the ballpark-area exclusion. We thus do not view the legislative history as shedding any significant light on the proper interpretation of the term "located" for purposes of that exclusion.

## D. Policy Considerations

We have already explained our reasons for disagreeing with BAH's argument that it would be absurd or unreasonable to interpret the ballpark-area exclusion to apply to franchise-tax benefits. *See supra* pp. 10-12. BAH similarly argues that it

would be absurd or unreasonable to interpret "located" in the ballpark-area exclusion to mean that a business entity could lose the entirety of its franchise-tax benefits simply because a single one of the entity's offices is located in the ballpark area. We are unable to agree with that argument. To the contrary, as we have previously noted, *see supra* at pp. 11-12, it is unclear to us whether a narrower or broader reading of the term "located" in the ballpark-area exclusion would be better as a matter of tax policy.

For the foregoing reasons, we hold that OTR correctly determined that BAH is "located in" the ballpark area, because BAH has an office there at which a substantial number of BAH employees work.

## V. Equitable Apportionment and Penalties

BAH argues that if the ballpark-area exclusion prevents BAH from claiming the franchise-tax benefit, logic and equity dictate that BAH should be required to pay only the portion of the franchise tax attributable to its activities within the ballpark area. OTR argues that this court lacks the authority to provide such relief in the face of plain statutory language. We need not resolve that dispute. Rather, we assume without deciding that this court would have such authority in "exceptional and extraordinary circumstances." *1776 K St. Assocs. v. District of Columbia*, 446 A.2d 1114, 1114 n.1 (D.C. 1982). We do not see such circumstances in this case.

BAH argues that it did not have notice that the ballpark-area exclusion operated to eliminate its franchise-tax benefit.  Essentially for the reasons already given, however, we do not view this as a case in which a taxpayer was unfairly surprised by an unforeseeable interpretation of a statute.  BAH's other arguments in support of equitable apportionment are at bottom policy arguments rather than the kind of extraordinary and exceptional circumstances that might provide a basis for disregarding the text of the ballpark-area exclusion.

Finally, BAH asks that if the court affirms OAH's decision, the court should make clear that BAH's position was taken in good faith and that no penalties would be warranted.  We express no view on that issue.  The order on review denied BAH's requests for refunds and did not address any issue of penalties.  Any dispute about penalties must be addressed in the first instance through the administrative process.

For the foregoing reasons, we affirm the decision of OAH.

*So ordered.*